251 So.2d 862 (1971)
John HENNINGER, Appellant,
v.
STATE of Florida, Appellee.
No. 38926.
Supreme Court of Florida.
June 16, 1971.
Rehearing Denied September 17, 1971.
*863 Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
Daniel S. Pearson of Pearson & Josefsberg, Miami, for appellant.
PER CURIAM.
This cause is before us to review a conviction of murder in the first degree without recommendation of mercy and sentence of death imposed in the Circuit Court, Eleventh Judicial Circuit, in and for Dade County. The original appearance of the matter before us resulted in a dismissal of the notice of appeal as not timely filed.[1] *864 We determined, however, that the ends of justice require the Court consider the matter as a petition for writ of habeas corpus. The parties subsequently stipulated, with approval of the Court, that in all pleadings and papers the cause be treated as an ordinary appeal. In keeping with this the parties have been referred to throughout as "appellant" and "appellee."
John Henninger, appellant herein, was found guilty of the murder by strangulation and stabbing of a young woman named Francoise Guimond. The evidence established that appellant was legally sane but indicated that when he was under the influence of alcohol or drugs his extreme aggressive tendencies came out. On the basis of this evidence, appellant contends that the single verdict procedure, whereby the jury determines guilt and punishment, is unconstitutional because it places on the accused the burden of choosing between presenting mitigating evidence on the issue of punishment or maintaining his privilege against self-incrimination on the issue of guilt. A similar argument was rejected by this Court in Craig v. State.[2]
Appellant contends that the failure of the trial judge to instruct the jury on the "standards applicable to the question of penalty to be imposed, and the factors which the jury may be permitted to take into account" rendered the death penalty in this case an arbitrary act. Counsel for Henninger requested a charge setting forth the standards and/or guidelines but no such standards and/or guidelines were proffered to the trial court and are not set out on appeal. In Baker v. State[3] this Court rejected the contention that Florida Statutes § 919.23(2), F.S.A., which allows the jury in capital cases to make a recommendation of mercy, was "void for vagueness" in that it did not set out standards to govern a mercy recommendation.
Appellant's third point on appeal is that he was denied assistance of counsel when Mr. Manners, court-appointed trial counsel, announced that he was not going to talk to appellant during the ten-minute recess called by the court in the midst of cross-examination of appellant by the Assistant State Attorney. We find no merit in appellant's argument that this constituted an abandonment of appellant which the court should not have allowed. Rather than "abandonment" it appears to have been part of counsel's trial tactics to let the jury know that appellant was "on his own" and not being coached during the recess in the cross-examination.
Appellant's Point Four for error is based on the admission into evidence of a series of "gruesome enlarged color photographs" which, says appellant, were not relevant and were prejudicial and inflammatory in effect. These photographs, specifically exhibits 3, 4 and 6, show the deceased in various positions showing knife wounds in the back and with her head half cut off. Cited in support of appellant's contention is Young v. State,[4] wherein this Court held that the introduction of 22 photographs taken away from the scene of the crime and showing all or portions of the partially decomposed torso of the victim was unduly prejudicial. Appellant interprets the Young case as holding that "necessity" rather than "relevancy" is the test for admissibility of gruesome photographs. "Necessity" may be a consideration where, as in Young, large numbers of cumulative photographs of a gruesome nature taken away from the scene of the crime, are offered into evidence. But relevancy remains the basic test, as stated in Young:[5]
"The fact that the photographs are offensive to our senses and might tend to inflame the jury is insufficient by itself to constitute reversible error, but the admission *865 of such photographs, particularly in large numbers must have same relevancy, either independently or as corroborative of other evidence."
In the instant case there are three photographs in evidence of the victim which can be classified as gruesome. Exhibit 3 is a colored photograph showing the body of the victim lying on the stairway as it was found. Exhibit 4 shows the deceased's back, exposing the knife wounds. Exhibit 6 shows the upper portion of the victim's body with the head partially severed and panty hose wrapped around the neck. These photographs were used in connection with testimony regarding the cause of death, identity and to refute appellant's claim of self-defense.
There is no question that the three photographs of the victim in the instant case are gruesome. The crime itself is so revolting that it would have been impossible to take pictures of the scene or the victim that were not gruesome. As we have indicated, however, the pictures in question were relevant and properly admitted into evidence.
Appellant contends that the trial court's instruction to the jury that "whatever verdict you find, it must be signed by one of your number as foreman, and dated with today's date, May 16, 1969 * * *" required the jury to reach a verdict within a fixed and limited period of time and they did in fact return the verdict two hours later. The State points out that no objection was interposed by counsel at the time this instruction was given and that, in any event, it could not be considered as coercive. In context with the entire charge, no error appears.
The last point urged by appellant on appeal has to do with the trial court's excusing for cause a prospective juror, William R. Barnett, who, says appellant, had not advanced any opinion or evidenced any bias which would preclude him from serving as a fair and impartial juror. The record reveals that the prospective juror had prior experience with psychiatrists while in the service which he stated would prejudice him on the question of insanity. He responded in part as follows on voir dire examination:
"MR. KOGAN: During the course of the trial, if the question of sanity becomes an issue  for you to determine the defendant's sanity  as to that issue, do you feel, because of your past experience, you would be prejudiced, so that you could not give this issue a fair and impartial consideration?
"MR. BARNETT: I don't really know. I couldn't tell you for sure whether I would or not.
"MR. KOGAN: In other words, are you stating now that you could not tell us whether or not you could give a fair consideration of the issue of insanity?
"MR. BARNETT: On that particular basis, I don't think I could."
We hold that the trial court did not err in excusing Mr. Barnett for cause.
The six points raised on appeal to this Court have been carefully reviewed but do not warrant reversal. We have also scrutinized the record of the proceedings below in accordance with Florida Statutes § 924.32(2), F.S.A. and have determined that the interests of justice do not require a new trial.
Accordingly, the judgment below is affirmed.
It is so ordered.
ROBERTS, C.J., and CARLTON, ADKINS, BOYD and DREW (Retired), JJ., concur.
ERVIN, J., dissents with opinion.
REVELS, Circuit Judge, dissents and concurs with ERVIN, J.
*866 ERVIN, Justice (dissenting):
It appears to me this case should be reversed for a new trial for two reasons:
1. The Assistant State Attorney in his voir dire examination for the prosecution by extensive questioning appears to me to have designedly intended to, and apparently did, extract tacit commitments from members of the jury panel that in the event of a guilty verdict the jurors selected would avoid giving the defendant a recommendation of mercy. His questioning ostensibly centered around whether the jurors believed in capital punishment but very subtly and adroitly by extensive additional questions was calculated to have the jurors selected tacitly agree that if they found the defendant guilty they would not recommend mercy. The trial judge did not preclude this line of questioning or give appropriate admonitions against; consequently, it appears to me from the record there was implanted in the jurors' minds by the State's questioning and confirmed by their responses that if they were not excused for cause they were accepted under the tacit understanding they would not recommend mercy. This tactic of the State was improper and prejudicial to a fair trial of the defendant in a murder case, especially since the jurors should be free after their guilty verdict is rendered to recommend mercy or not in their unbridled discretion without standards or guidelines and unencumbered by any prior subtle understanding to the contrary induced by the State. Cf. McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711, decided May 3, 1971 by United States Supreme Court.
2. It is quite obvious to me that the "gruesome enlarged color photographs" of the deceased victim had no real purpose in being introduced in evidence to establish guilt, but were calculated by the State to inflame the jury and prejudice it unfavorably against defendant.
I think a new trial should be granted for the reasons stated.
REVELS, Circuit Judge, concurs.
NOTES
[1] Henninger v. State, 230 So.2d 149 (Fla. 1970).
[2] 179 So.2d 202, cert. denied, 383 U.S. 959, 86 S.Ct. 1224, 16 L.Ed.2d 301 (1966).
[3] 225 So.2d 327 (Fla. 1969).
[4] 234 So.2d 341 (Fla. 1970).
[5] Id. at 347.