341 So.2d 762 (1976)
David Livingston FUNCHESS, Appellant,
v.
STATE of Florida, Appellee.
No. 47828.
Supreme Court of Florida.
December 9, 1976.
Rehearing Denied February 15, 1977.
*763 Louis G. Carres, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowksi, Asst. Atty. Gen., for appellee.
PER CURIAM.
We here review on direct appeal the first degree murder convictions and consecutive sentences of death imposed upon appellant by the Circuit Court in and for Duval County, Florida. Article V, Section 3(b)(1), Constitution of Florida.
Appellant was indicted in a two count indictment for the stabbing death of Anna Waldrop and for the stabbing death of Clayton Ragan. He was convicted on both counts of murder in the first degree, and was sentenced to two consecutive sentences of death after recommendation by the jury that appellant be sentenced to death. Appellant's motion to dismiss the indictment on the ground that the death penalty statute is unconstitutional was denied. Pursuant to Rule 3.210, Florida Criminal Procedure Rules, the trial judge granted appellant's motion suggesting that he was insane and ordered a psychiatric examination. A sanity hearing was held and appellant was adjudged sane.
Three persons, two of whom died, were discovered seriously stabbed at Avondale Liquors in Jacksonville, Florida. At the time of the murders, appellant was in the act of committing robbery.
The trial judge carefully evaluated in detail each of the mitigating and each of the aggravating circumstances set out in Section 921.141, Florida Statutes, and stated, inter alia:
"The robbery and the murders committed by the Defendant were premeditated. The Defendant selected the place for a robbery and like a cobra, he carefully chose the time to strike while casually drinking a cup of coffee across the street from the scene of the crimes. The State has proven beyond a reasonable doubt that the robbery and the murders were premeditated. The objective of the Defendant was to obtain money and he was willing to take the lives of others in order to do so. By stabbing and cutting throats, he killed two people and pitifully mangled a third person who, at this writing, has not recovered consciousness and after seven months, remains in a coma hardly more than a vegetable. The victims were all practically twice the age of the Defendant and two of the victims were women, one of whom was left gasping for breath at the scene of the crimes.
"These are truly some of the most senseless, heinous and horrible murders that have ever taken place in the City of Jacksonville."
We would agree that these were truly senseless, atrocious and heinous crimes.
We have listened carefully to oral argument, examined and considered the record in light of the assignments of error and briefs filed and we have also, pursuant to Rule 6.16(b), Florida Appellate Rules, reviewed the evidence to determine whether the interests of justice require a new trial, with the result that we find no reversible error is made to appear and the evidence in the record before us does not reveal that the ends of justice require that a new trial be awarded.
Upon considering all the mitigating and aggravating circumstances and careful review of the entire record in the cause, the trial court imposed the death penalty for the commission of the afore-described atrocious and heinous crimes.
Accordingly, the judgment and sentence of the Circuit Court are hereby affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG, HATCHETT and ROBERTS (Retired), JJ., concur.
ENGLAND, J., concurs with an opinion.
ENGLAND, Justice (concurring).
While I concur with the majority of the Court that David Funchess had a fair trial and was properly sentenced, one of the issues raised in his defense warrants discussion. Funchess asserts that certain photographs *764 introduced into evidence by the state, which depict the scene of the crimes and the victims, served no legitimate evidentiary purpose, but rather were put before the jury solely to shock them by the horror of the victims' deaths.
We have previously indicated that one who perpetrates a horrible crime is not privileged to have a completely antiseptic trial at which a jury of his peers is immunized from the gruesome details his acts produced. Henninger v. State, 251 So.2d 862, 865 (Fla. 1971). We have also indicated that photographic evidence which is likely to inflame or shock a jury is inadmissible unless it is relevant to establish at least some aspect of the crime. Bauldree v. State, 284 So.2d 196 (Fla. 1973); State v. Wright, 265 So.2d 361 (Fla. 1972); Henninger, above; Young v. State, 234 So.2d 341 (Fla. 1970). Our adoption of a "relevance" test, rather than a "necessary" test, creates troublesome distinctions which obviously will require a case-by-case analysis by trial and appellate judges. My separate discussion of this issue here is written with the hope that prosecutors in Florida will consider in each case the possibility of proving guilt with evidence which includes photographs well under the upper limit of judicial acceptability.
The photographs introduced into this trial were extremely large (16" x 19"), and they were in some cases closeups of the victims and their wounds. I do not have serious doubts as to the propriety of admitting 12 of the 13 photographs introduced, in light of the circumstances of the crime and the testimony which surrounded their introduction. As to state's exhibit 13, however, I seriously question the state's need to introduce the photograph in light of the extremely gruesome expression which was portrayed on the victim's face in death.
This photograph was introduced after the only medical witness had testified as to the causes of death and the state had introduced during his testimony the photographs which he had taken of the victim and wounds. Those photographs were allowed into evidence without objection by the defense. The asserted justification for introducing state's exhibit 13 after his testimony was concluded hinged on a short exchange between defense counsel and the medical examiner to the effect that lacerations on one of the victim's arms were probably produced while she was defending herself against her assailant's attack. Defense counsel timely objected to the introduction of this photograph on the ground that it was so gruesome in its entirety, showing in detail her facial expression in death, and that the arm wounds it depicted were inconsequential in comparison to the total impact it produced. It was also argued that her arm wounds were irrelevant to the cause of death.
State's exhibit 13 does show lacerations to the victim's arm, and the arm is positioned in a way which would suggest an attempt at self-defense. However, the medical testimony was uncontroverted that death occurred from multiple stab wounds to the victim's chest. It seems rather apparent that the state introduced this photograph in an effort to emphasize the gruesome nature of this crime and to portray, more vividly than words could describe, the helpless horror this victim must have felt while attempting to defend herself from brutal assault. I can see no reason why this photograph was necessary in the guilt or innocence phase of this trial, and I am not persuaded by the assertion that defense counsel's cross-examination of the medical examiner developed some discussion concerning an effort at self-defense. In my view, the state went to the limit of what would be permissible without tainting the entire trial.[1]
Given the imprecise nature of our rule regarding relevant but inflammatory photographic *765 evidence, and the fact we have recently upheld several convictions in which photograph evidence was to my mind as gruesome and unnecessary as this photograph, I find no basis to reverse the conviction in this case. I echo an earlier suggestion from this Court, however, that prosecutors in this state should be more circumspect in their endeavors and should remove from the courtrooms of this state, to the fullest extent possible, the elements of passion and emotion.[2] We must all strive for a system in which juries convict alleged criminals solely on the basis of proof, without resort to the horror of particular crimes. Our Code of Professional Responsibility requires no less:
"The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."[3]
NOTES
[1] I reject any suggestion that errors of this type can be overcome when an appellate court finds ample other evidence in the entire record to demonstrate that a particular defendant has committed the crimes with which he or she was charged. That formula is too simple. If that were the rule of law, there would be no reason to limit the bounds of permissible evidence.
[2] Young v. State, 234 So.2d 341, 348 (Fla. 1970).
[3] Fla.Bar Code Prof.Resp., E.C. 7-13.