429 So.2d 1309 (1983)
Phillip FISCHER, Appellant,
v.
STATE of Florida, Appellee.
No. AN-456.
District Court of Appeal of Florida, First District.
April 14, 1983.
Rehearing Denied May 4, 1983.
Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Wallace E. Albritton, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Fischer appeals the judgment of the trial court finding him guilty of tampering with a witness. He argues that the trial was fundamentally flawed in that the alternate juror deliberated with the six regular jurors, and that the trial court erred because certain evidence admitted was unnecessarily inflammatory. We agree with appellant's first point, and therefore, reverse and remand.
*1310 Fischer was charged with threatening a witness, Bonnie Salter, causing her to be placed in fear by threat of force if she continued to prosecute her complaint against Fischer in a pending criminal investigation for aggravated battery. At the trial for tampering with a witness much of the evidence introduced, over the objection of appellant, concerned the alleged aggravated battery against Bonnie Salter, for which the appellant was not on trial. In addition to testimony from Ms. Salter, her ex-husband and a sheriff's deputy concerning the alleged aggravated battery, three photographs taken of Ms. Salter subsequent to the alleged aggravated battery were offered into evidence. The photographs of Ms. Salter were taken by her ex-husband within a five day period immediately following the alleged aggravated battery. Each of the three photographs shows a separate view of Ms. Salter's visage: a right, left, and frontal view. The photographs demonstrate that Ms. Salter's head was badly injured. Appellant objected to the introduction of these photographs, arguing that they were not relevant to any material issue in the prosecution for threatening a witness and that the pictures were inflammatory. The State contended that the photographs, and all the other evidence of the alleged aggravated battery, were relevant to show that Ms. Salter was placed in fear by appellant. The trial court overruled the objection and the photographs were introduced.
After closing arguments and instructions on the law, the jury returned a verdict finding appellant guilty of tampering with a witness. Upon polling the jury, the record reflects that seven jurors responded to the court's questions and stated that they agreed with the verdict. When defense counsel asked how many of the jurors participated in the deliberations, the court stated, "Oh, for Heaven's sake, we forgot to discharge the alternate. Well, it's too late to do anything about that now. I assume that all the jurors participated in it, they were all in the room." Defense counsel promptly objected and moved for a mistrial, but the motion was denied.
Turning first to the evidentiary issue, we do not think that the trial court abused its discretion in allowing introduction of the evidence relating to the aggravated battery, including the three photographs. Appellant was charged with violation of section 918.14(3), Fla. Stat. (1981), which makes it unlawful for any person to cause a witness to be placed in fear by force or threats of force.[1] Under this statute, the fear of the witness is an element of the crime which the prosecution must prove beyond a reasonable doubt. The record reveals that defense counsel at the trial was making an issue of whether Ms. Salter was actually placed in fear by appellant's threats. Defense counsel's opening statement included the allegation that appellant's threats, if any, were in fact idle.[2] *1311 Therefore, although the photographs and other evidence of the aggravated battery are highly inflammatory, they are also highly relevant to the issue of the witness' fear. We also note that the record indicates more than three photographs were taken of Ms. Salter but that only three were introduced. The photographs introduced each show a different aspect of the witness' face. This, therefore, is not a case of a multitude of gruesome photographs which are needlessly cumulative and obviously intended solely to inflame the jury. The case at bar is unlike Young v. State, 234 So.2d 341 (Fla. 1970) where the court found that introduction of 45 inflammatory photographs, 22 of which showed the partially decomposed torso of the victim, was unreasonable and not justified by the slight relevancy of the photographs. As the court stated in Young, "The fact that the photographs are offensive to our senses and might tend to inflame the jury is insufficient by itself to constitute reversible error... ." Id. at 347. See Henninger v. State, 251 So.2d 862 (Fla. 1971).
We find merit, however, in appellant's other point on appeal. Appellee candidly admits that this case must be reversed for a new trial if we follow the holding of Berry v. State, 298 So.2d 491 (Fla. 4th DCA 1974). In Berry, the alternate juror was allowed to accompany the jury to the jury room during deliberations but did not actually participate in the determination of the verdict. No objection to this procedure was interposed by counsel for the defendant. The Berry court, stressing the privacy and secrecy necessary for jury deliberations, held that the presence of the alternate juror in the jury room during deliberation constituted fundamental error. The court reasoned that even though the alternate juror did not actually participate, the possibility that she could have affected the jury verdict was apparent. The attitude of the alternate juror could have been conveyed to the jurors by facial expressions, gestures or the like, and may have had some effect upon the decision of one or more juror. We find that the rationale of Berry applies a fortiori to the facts sub judice where the alternate juror actually participated in deliberations and voted on the verdict.
The right to trial by jury is, of course, one of the most sacred and fundamental rights of our legal system. See Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). Once a jury retires to deliberate, it becomes a unique collegial body, and each jury is as different from every other as one person is from another. The impact of an extra person, or a missing person, on any individual jury is impossible to predict. It is not difficult to imagine how one person, through persuasion or otherwise, could sway the opinion and vote of all the other jurors, thus determining the outcome. In United States v. Beasley, 464 F.2d 468 (10th Cir.1972) an alternate juror retired with the twelve jurors to the jury room. She participated in the vote to select a foreman, and voted to go to lunch. She was with the jury about twenty minutes after it retired before the court realized that the alternate had not been discharged. The trial court then held a brief hearing to determine the extent to which the alternate had participated, and based on its findings, denied a defense motion for mistrial. In Beasley, the Tenth Circuit Court of Appeals stated:
When the case was submitted and the jury retired to deliberate, it then, with the selection of the foreman or with any other act to organize or plan the deliberation, began its own proceedings. Once these proceedings commenced, "the jury" consisted only of the prescribed number *1312 of jurors. The alternate then became as any other stranger to the proceedings regardless of whether she had been discharged. Thus the alternate juror was as any other outsider would be when she continued to sit with the jurors as they began their own proceedings. It is apparent that this alternate, up until the critical time, was just as qualified to sit in deliberation as was any other juror, but this qualification ceased whether or not she was discharged under Rule 24 of the Federal Rules of Criminal Procedure.
There is important authority which holds that if an alternate retires with the jury, the consequences of the error caused thereby will be examined to determine whether any prejudice to the defendant has been shown. Under this procedure a hearing is held and jurors, or some of them, are questioned to see how far their deliberations had progressed and how the alternate juror had participated therein. This is to see if the defendant was "prejudiced." In these circumstances it is difficult to see how a test of "prejudice" can be applied. The alternate was fully qualified to participate as were the others, she had been instructed with the others, and her participation can hardly be considered "prejudicial." Perhaps an attempt could be made to show the juror attempted to influence others by expressing an opinion or conclusion, but again this is not related to "prejudice." The borrowing of a "prejudice" standard from other constitutional situations does not seem to provide an appropriate standard or test.
Once the prescribed number of jurors becomes "the jury," then, and immediately, any other persons are strangers to its proceedings. Their presence destroys the sanctity of the jury and a mistrial is necessary.
The Government argues that the twelve-man jury is no longer constitutionally required. However, the alternate's presence on a six-man jury leads to the same complications and should lead to the same results as here reached.
Id. at 469-70.[3]
In light of the foregoing, we cannot say that the error involved is harmless, as we are urged to do by appellee. The error here goes to appellant's right to trial by jury, guaranteed by the sixth amendment and by Art. I, § 22, Fla. Const. Therefore, this court cannot hold the error harmless unless we are able to say that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here the impact of the alternate juror is impossible to determine. Accordingly, the judgment is reversed and the cause remanded for further proceedings.
REVERSED and REMANDED.
WENTWORTH, J., concurs.
JOANOS, J., dissents, with opinion.
JOANOS, Judge, dissenting.
In this case the trial judge routinely selected an alternate juror for the trial. The alternate along with the other jurors heard and saw everything presented and was subjected to the same conditions throughout *1313 the trial. At the end of arguments and instructions, the trial judge in the presence of counsel inadvertently failed to excuse the alternate. There was no objection from anyone. The jurors including the alternate went out, deliberated for 33 minutes, came back and announced a guilty verdict. The jury was polled and then counsel for the defendant pointed out that there were seven jurors, objected and moved for mistrial.
The error here was that appellant was tried by seven jurors instead of six. There is nothing fundamentally unfair about that. The Constitution of the State of Florida in Article I, Section 22, guarantees that a jury be comprised of "... not fewer than six ..." but left it to the legislature to determine the number beyond that. Florida Statutes, Section 913.10 provides for twelve person juries to try capital cases and juries of six people to try "all other criminal cases." The legislature had to set the number somewhere but I am unaware of any reasonable argument that a defendant's rights are better protected by a jury of six instead of seven.
In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) six-person juries in criminal cases were upheld as constitutional, with the court determining that the performance of a jury's role and its reliability as a fact-finder are not functions of its size. Williams at 101, 90 S.Ct. at 1906. Eight years later, the court decided that juries comprised of less than six persons failed to protect a criminal defendant's right to trial by jury. Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978). In so deciding, the court cited a study which concluded that the optimum jury size would be between six and eight persons. Ballew at 234, 98 S.Ct. at 1036, citing Nagel & Neef, Deductive Modeling to Determine an Optimum Jury Size and Fraction Required to Convict, 1975 Wash.U.L.Q. 933 [hereinafter Nagel & Neef]. The study revealed that "[t]he probability of convicting any defendant increases when ... the size of the jury ... is reduced... ." Nagel and Neef at 949.
Some other states and the federal system require juries of twelve in most criminal cases. Are those systems fundamentally unfair because they provide for a larger number of jurors than six? What about capital cases in Florida? The statute requires twelve jurors. My point is that more jurors not less jurors is generally regarded as more protective of a defendant's rights.
The error that this defendant was tried by seven instead of six was harmless. Under Florida Statutes, Section 59.041, this does not require a new trial. Further, appellant waived his right to object when the trial judge sent that jury of seven out to deliberate and appellant's counsel did not object. Defense counsel does not have the luxury of waiting to see what happens before an error is brought to the court's attention. See Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).
I dissent.
NOTES
[1] Section 918.14(3), Fla. Stat. (1981) provides:

(3)(a) It is unlawful for any person:
1. To cause a witness to be placed in fear by force or threats of force;
2. To make an assault upon any witness or informant; or
3. To harm a witness by an unlawful act in retaliation against the said witness for anything lawfully done in the capacity of witness or informant.
(b) Any person violating the provisions of this subsection shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] The following is an excerpt from defense counsel's opening statement:

Now, the Information alleges and what the State has to prove is that a threat was made by Phillip Fischer and that this was not an idle threat, but it actually caused Bonnie Salter to be placed in fear that the defendant would do what he threatened. And I'm quite sure that Ms. Salter's going to get up on the stand and tell you that she felt threatened and she was placed in fear by the action or by the particular phone call. However, what I ask you to do in any case like this is you've got to look at the activities of the individuals involved and determine whether she was placed in fear or whether she thought this was just an idle threat made by an angry man and I think some of the testimony that you will hear that would indicate that it very possibly was an idle threat was, number one, Bonnie Salter was aware that a condition of Phillip Fischer's bond was that he not be around her unless she wanted him to be around her. At any time that Bonnie Salter felt like she didn't want to be with the defendant, she could call the State Attorney's office and have Mr. Fischer put in jail. That was a condition of his bond.
And in spite of that, she continued to see him.
At the end of her opening statement defense council added:
I think I fully expect that the testimony from Bonnie Salter was that she felt threatened, but that's an easy thing to say and your job is to look behind what she says and see if her actions document what she says. Thank you.
[3] Accord, United States v. Chatman, 584 F.2d 1358 (4th Cir.1978); United States v. Virginia Erection Corp., 335 F.2d 868 (4th Cir.1964); People v. Britton, 4 Cal.2d 622, 52 P.2d 217 (1935); State v. Bindyke, 288 N.C. 608, 220 S.E.2d 521 (1975); Brigman v. State, 350 P.2d 321 (Okl.Cr.App. 1960); Commonwealth v. Krick, 164 Pa.Super. 516, 67 A.2d 746 (1949). But see Johnson v. Duckworth, 650 F.2d 122 (7th Cir.); cert. denied, 454 U.S. 867, 102 S.Ct. 332, 70 L.Ed.2d 169 (1981) (alternate's mere presence during jury deliberations did not deny appellants a fair trial); Potter v. Perini, 545 F.2d 1048 (6th Cir.1976) (same).

For a case specifically addressing the situation of the "seventh" juror, albeit in a civil setting, see Kuykendall v. Southern Railway Co., 652 F.2d 391 (4th Cir.1981) (reversing a judgment because case was submitted to jury of seven where local rule authorized jury of six or twelve).
See also United States v. Watson, 669 F.2d 1374 (11th Cir.1982) (stating as dicta that if the alternate deliberates with jury on question of guilt, then reversal is mandatory).