IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JUSTIN DEVONE MORGAN,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-1630

Opinion filed March 10, 2017.

An appeal from the Circuit Court for Bay County.
James B. Fensom, Judge.

Andy Thomas, Public Defender, Ross Marshman, Special Assistant Public
Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Virginia Chester Harris and Kaitlin Weiss,
Assistant Attorneys General, Tallahassee, for Appellee.

JAY, J.

     This is a direct criminal appeal from Appellant's judgment and sentence for

resisting an officer without violence and possession of less than twenty grams of

cannabis. The sole point raised is whether fundamental error occurred when a

primary juror carried to the jury room the alternate juror's notepad just moments before the bailiff retrieved it at the trial court's request. We conclude that this simple happenstance did not rise to an error of fundamental proportions, but, instead, was harmless error, if any error at all. Accordingly, we affirm.

The facts are not in dispute. After the trial court instructed the jury, the jury retired to deliberate at 6:03 p.m. Immediately afterwards, the trial court addressed the alternate juror, saying, "If you'll give us your juror button, we'll let you go. And we do this in every case, the bailiffs walk out with jurors to their car." At that point, one of the prosecutors announced, "Your Honor, I think we have one thing we need to address really quickly." The other prosecutor interjected: "Your honor, my investigator just informed me he believed he observed one of the jurors take the alternate juror's notepad back into the jury room." The first prosecutor added, "I saw it, too." The trial court said, "Okay, we need to retrieve that." The investigator was able to describe the juror in question and the bailiff was dispatched to the jury room. The court reporter noted parenthetically for the record that "Bailiff retrieves notepad." The trial court then declared that the court would be in recess "until we hear from the jury." The transcript reflects that the proceedings were officially "off the record" at 6:04 p.m.

We are fully cognizant of the need to "carefully and zealously guard[] against any intrusions into the deliberations of the jury," and wholly embrace the proposition

2

that "the presence of any stranger, including an alternate juror, during deliberations constitutes fundamental error." Bouey v. State, 762 So. 2d 537, 539 (Fla. 5th DCA 2000) (citations and footnote omitted). These rules "appl[y] equally to both civil and criminal cases." Id. at 540. However, we are prompted by the specific facts of this case to make the following points in rejecting Appellant's assertion that the alternate juror's notepad was the equivalent of a "stranger" in the jury room.

First, the case law relied upon for reversal is wholly inapposite because in this case, the alternate juror was discharged before the jury retired to the jury room and was not physically present during the jury's deliberations. By contrast, all of the decisions advanced by Appellant involved the alternate juror's physical presence in the jury room extending beyond the period of mere "organizational activity" and into the jury's actual deliberations. See, e.g., Bouey, 762 So. 2d at 540 (holding that "if the alternate is present at any time after the deliberations commence, which is the time the jurors begin discussion of the case, then the error is fundamental and mistrial or a new trial is necessary"); Fischer v. State, 429 So. 2d 1309, 1311 (Fla. 1st DCA 1983) (reversing for a new trial where it was discovered during the polling of the jury that the alternate juror had participated in the decision); Berry v. State, 298 So. 2d 491, 493 (Fla. 4th DCA 1974) (reasoning that "[e]ven though [the alternate juror] did not actually participate in the determination of the verdict, the possibility that she could have affected the jury verdict was apparent. The presence of [the alternate

3

juror] in the jury room could have operated as a restraint upon the jurors and their freedom of expression. The attitudes of [the alternate juror] conveyed by facial expressions, gestures or the like may have had some effect upon the decision of one or more juror."); but see Jacksonville Racing Ass'n v. Harrison, 530 So. 2d 1001, 1005 (Fla. 1st DCA 1988) (holding it was harmless error where the alternate juror was present only during the period when the jury elected the foreperson).

Second, by all accounts, the alternate juror's notepad was expeditiously removed from the jury room, likely, within a minute or two of the jury's going back. In the highly analogous case of State v. Purdom, No. A13-0205, 2014 WL 2178626 (Minn. Ct. App. May 27, 2014), the Minnesota Court of Appeals was "unpersuaded" that a juror's act of taking an alternate juror's notes into the jury room—for a short period of time—prejudiced the jury. Specifically, in Purdom, after the trial court charged the jury, "it identified the alternate juror and told her that she could leave her notes or give them to one of the jury attendants." 2014 WL 2178626 at *6. "The court then noted that the alternate juror had 'handed her notes to her fellow juror sitting next to her before she left' but that a jury attendant retrieved the notes and that the notes were not in the jury room." Id. On these facts, the Court of Appeals held that "even if we were to assume that the presence of the alternate juror's notes in the jury room was error, we would not presume prejudice." Id. The court distinguished those decisions holding that the alternate juror's *presence* during

4

deliberations was "'*presumptively prejudicial*.'" Id. (quoting State v. Crandall, 452 N.W.2d 708, 709 (Minn. Ct. App. 1991)) (emphasis added in Purdom); see also State v. Spears, 908 P.2d 1062, 1074 (Ariz. 1996) (after assuming for argument's sake that the alternate juror's notes left in the jury room during deliberations were "extraneous evidence," the court found that the defendant was not entitled to a new trial because he failed to show actual prejudice). As in Purdom, we are not persuaded that the fleeting presence of the alternate juror's notepad in the jury room was "presumptively prejudicial."

Third, stated in a slightly different way, the fact that the notepad was removed so quickly causes us to conclude that any error was "harmless." Harrison, 530 So. 2d at 1005. The jury was instructed that it must follow the law as set out in the instructions. Those instructions included an instruction that the "first thing" the jury should do was to select a foreperson. It is well-established that "'[a]bsent a finding to the contrary, juries are presumed to follow the instructions given them.'" Johnson v. State, 164 So. 3d 794, 797 (Fla. 1st DCA 2015) (quoting Carter v. Brown & Williamson Tobacco Corp., 778 So. 2d 939, 942 (Fla. 2000)). Thus, assuming—as we must—that the jury's first point of business was to elect a foreperson, it is irrefutable that the alternate juror's notepad was in the jury's presence during its "limited organizational activity," a fact that stands in sharp contrast to the cases "in which actual deliberation was commenced." Harrison, 530 So. 2d at 1005.

5

Therefore, under <u>Harrison</u>, a harmless error analysis would apply. <u>Accord</u> <u>Bouey</u>, 762 So. 2d at 539 (citing <u>Harrison</u> and recognizing that "a distinction should be made between instances where the alternate juror was present while the jury actually deliberated on its verdict and instances where the alternate juror was present only during the limited organizational activity that the jurors typically engage in before actual deliberations begin," with the latter instance being subject to "the harmless error doctrine").

Fourth, we feel obliged to comment on defense counsel's failure to request any court action after it was disclosed that a primary juror had removed the alternate juror's notepad. Specifically, counsel did not object to the trial court's solution of sending the bailiff back to the jury room to retrieve the notepad; did not request the court to conduct an inquiry into whether any of the jurors had read the alternate juror's notes (assuming the notepad contained any written notes, a fact that is not established in the record); did not request the trial court to give any special instruction to the jurors regarding the presence of the notepad; and, did not request a mistrial. <u>See Harrison</u>, 530 So. 2d at 1005 (noting that "the error was never brought to the court's attention as a basis for mistrial or other relief, but [was] instead first articulated by briefs in this court"); <u>cf. Bouey</u>, 762 So. 2d at 538-39 (observing that when the prosecutor advised the court that he had been made aware that the alternate juror had accompanied the six primary jurors to the deliberation room, both attorneys

6

requested an opportunity to establish a record of what had happened with regard to the alternate juror); Fischer, 429 So. 2d at 1310 (noting that when it became apparent after polling the jurors that the alternate juror had participated in the deliberations, defense counsel "promptly objected and moved for a mistrial"); Berry, 298 So. 2d at 492 (remarking that "[a]fter the jury announced its verdict finding the defendant was guilty of the robbery charged, counsel for the defendant moved for a new trial on the ground that the trial judge committed fundamental error in permitting [the alternate juror] to be in the jury's presence while the jury was deliberating," even though, upon inquiry, it was acknowledged she had not participated in the determination of the verdict).

In Hargrove v. CSX Transportation, Inc., 631 So. 2d 345 (Fla. 2d DCA 1994), it was discovered during the jury's deliberations that the bailiff had delivered *the trial court's* copy of the jury instructions to the jury room. The court's copy reflected changes made during the charge conference by way of written notations and lines drawn through sections to be deleted. When it was discovered that the court's copy of the instructions was in the jury room, the parties agreed that the trial court should retrieve them, and this was promptly accomplished. No objection was raised by either side. Also, there was no request for a curative instruction or a motion for mistrial.

Following a verdict in favor of Hargrove, CSX, for the first time in a motion for new trial, raised the specter of the jury's having considered the marked-through sections of the court's instructions. The trial court granted the motion. On appeal, Hargrove argued that the court's order was erroneous because CSX never objected until after the verdict was rendered and did not argue to the trial court that fundamental error occurred.

In reversing the trial court's order and concluding that CSX's objection was untimely and was not preserved for purposes of the motion for new trial, the Second District succinctly stated: "This particular case validates the requirement of a timely objection because remedial options were available when it was discovered that the instructions were in the jury room." Id. at 346. Similarly, here, defense counsel's inaction eliminated any opportunity for the trial court to rectify any purported prejudice by eliminating the opportunity to ask the jurors if "any member had even seen" the notepad or to request an appropriate curative instruction, if necessary. Id.

Without question, "the deliberations of the jury [must] be kept free from any influence from strangers to the proceedings who may inappropriately influence the jury or impart information to them that was not filtered through the rules of evidence under judicial supervision during the trial process." Bouey, 762 So. 2d at 539. But, for the reasons discussed above, we find the sanctity of the jury's deliberations was not disturbed. Yet, even if there were a remote question of a minor irregularity,

8

counsel's failure to object waived that argument on appeal.  Therefore, Appellant has failed to demonstrate any error in this case.

AFFIRMED.

ROWE and KELSEY, JJ., CONCUR.