DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TAIDE WISTON ASENCIO, JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1686

[April 4, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 502014CF004333A.

Carey Haughwout, Public Defender, and Stacey Kime, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

Appellant Taide Asencio appeals his conviction for shooting into an occupied vehicle. He raises three issues on appeal, although only two of them merit discussion. First, whether the trial court erred by admitting a jail call made by appellant while he was in jail awaiting trial. Second, whether the trial court erred by allowing the alternate jurors to enter the jury room at the end of the trial, but before deliberations. We affirm on both of these issues. On the third issue of whether the jury's verdict was inconsistent, we affirm without comment.

Appellant was arrested and charged with three counts of attempted murder with a firearm and one count of shooting into an occupied vehicle. The police investigation revealed he approached the back of a truck stopped outside a convenience store, and shot at the occupants seated inside. At trial, the State sought to admit into evidence the recording of a jail call made by appellant while in custody. To lay the foundation for admitting the call, the State called a detective to testify that she spoke to appellant for approximately thirty minutes, and was familiar with

appellant's voice because of his distinctive "southern drawl." However, when asked whose voice she recognized in the recording, she said the name "Sanchez," instead of appellant's name.[1]  The prosecutor then abruptly ended direct examination of the detective without attempting to admit the recording into evidence.

Later in the trial, a records custodian in the telecommunications department of the Palm Beach County Sheriff's Office was called to testify on behalf of the State.  She confirmed that, as the custodian of records, she keeps and maintains the records of jail calls made by inmates at the Palm Beach County Jail and that those records are kept in the ordinary course of business.  The records custodian testified that the recordings were recorded and maintained at or near the time the calls were made, and stored on a secure server only accessible with a username and password.

She then explained to the jury how the jail's call system works. Once an inmate picks up the telephone, a recording plays and says the call may be recorded or monitored.  The recording asks the inmate to manually enter his or her booking number plus PIN number into the phone's keypad. The system also requires inmates to verify their identity using a system that employs voice recognition software to match the inmate's voice with his or her name as recorded during the booking process.  If this three-tiered verification process is successfully completed and the inmate dials the phone number for the outgoing call, the parties may start speaking once the call is accepted.

The records custodian also explained that she created a CD containing over 100 calls made by appellant while he was in jail, and that the CD was an accurate reflection of those calls.  The State sought to admit one of the jail calls on the CD into evidence.  Defense counsel objected and argued that the call was not properly authenticated.  The trial court overruled the objection, and admitted the recording into evidence.  It reasoned that the recording of the call was admissible because of the jail call system's verification process and the fact that earlier at trial the detective recognized appellant's voice and identified him as the speaker in the jail call.  Neither the prosecutor nor defense counsel informed the trial court that the detective identified the speaker in the recorded jail call as "Sanchez."

The jail call was played for the jury.  In the call, one of the speakers admitted to the shooting, and stated, "They got me on camera. . . . I hit

---

[1] Sanchez was the name of one of the victims in this case.

him in the head one time and four in the back.  But that mother fucker didn't die."

After the jury was charged at the conclusion of trial, the trial court addressed the alternate jurors, and allowed them to go back into the jury room to say goodbye to the other jurors:

> THE COURT: And so it is now incumbent upon me to identify our two alternate jurors and to excuse them with my sincere thanks.  You do not know who they are. Our alternate jurors in this case are [Hernandez] and [McCray]. Those are our two alternates.  Now, Ms. Hernandez and Ms. McCray, did you leave personal items in the Jury room?
>
> MS. MCCRAY: Yes.
>
> THE COURT: Okay.  You can go back – leave your personal set of jury instructions and your personal notes on your chairs.  The rest of you can take your personal set of jury instructions and your notes back into the jury room.  Say goodbye to Ms. Hernandez and Ms. McCray.  And then they will come right back on out and then I will excuse them with my thanks.  I want to wish the best of you the best of luck in your deliberations.  And Ms. Hernandez and Ms. McCray we will see you right back out here in just a moment.  You can go back and get your personal items. Okay?  And if you want to exchange numbers with people that you have met you can certainly do that in the back just for a moment. Okay? Great. Come on out.

The jury exited the courtroom, and approximately two minutes later, the alternate jurors came back to the courtroom.  The court thanked them for their service and officially discharged them.  The jury ultimately acquitted appellant on the three attempted murder counts, but found him guilty of shooting into an occupied vehicle.  This appeal followed.

### Admissibility of the Jail Call

"The standard of review of a trial court's evidentiary rulings is abuse of discretion." *McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007).

"Authentication or identification of evidence is required as a condition precedent to its admissibility.  The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in

3

question is what its proponent claims." § 90.901, Fla. Stat. (2016). "[T]he authentication should be made by the technician who operated the recording device or a person with knowledge of the conversation that was recorded." *Santana v. State*, 191 So. 3d 946, 948 (Fla. 4th DCA 2016). "[T]here is no specific list of requirements for authentication, and each case must be determined on its own merits." *Vilsaint v. State*, 127 So. 3d 647, 650 (Fla. 4th DCA 2013). The question for the trial court is not whether the evidence is authentic, but whether evidence exists from which the jury could reasonably conclude that it is authentic.

An audio recording may be authenticated by a witness who has some "prior special familiarity" with the defendant's voice, or by a witness that has "special training in voice recognition." *Evans v. State*, 177 So. 3d 1219, 1230 (Fla. 2015); *see also Vilsaint*, 127 So. 3d at 650 (holding that a recording was sufficiently authenticated by a detective who purportedly recognized the defendant's voice on the recording because "the detective spoke to appellant for approximately ten to fifteen minutes prior to appellant being put in the cell").

Alternatively, an audio recording may be authenticated by a records custodian of the jail calls, even if that custodian is not personally familiar with the defendant's voice. In *United States v. Harris*, 338 F. App'x 892, 894 (11th Cir. 2009), defendant Harris argued that the State failed to properly authenticate a jail call. The Eleventh Circuit disagreed:

> Although no witness identified the voice as Harris's, the evidence showed that the recording was associated with Harris's jail identification number, which corresponded with the unique I–PIN number assigned to Harris. Moreover, the speaker identified himself as "Michael," which is Harris's first name. The inmate speaker in the recording also makes reference to the actual facts at the time of the motorcycle accident that were within the Defendant Harris's knowledge, further corroborating that the Defendant is the speaker. As such, the government met its burden of authentication by providing sufficient evidence to make out a prima facie case that the speaker in the recording is Michael Harris.

*Id.* at 895; *see also State v. Norah*, 131 So. 3d 172, 193 (La. Ct. App. 2013) (admitting jail call with telecommunications supervisor of jail on witness stand was proper because "the recordings were directly tied to the defendants by their unique folder numbers").

Here, the trial court did not base its ruling regarding authenticity solely on the assumption that the detective properly identified appellant on the jail call.  As in *Harris*, other sufficient indicia of reliability were present to admit the recording into evidence.  338 F. App'x at 895.

The records custodian thoroughly explained how the system used the inmate's booking number, PIN number, and voice recognition software to identify the individual placing the call.  This three-tiered verification process was used to identify appellant as the inmate who made the call that was ultimately admitted into evidence and played for the jury.  Additionally, a speaker on the recorded jail call referenced facts of the alleged crime that would be within the perpetrator's knowledge.

When considered together, these facts provided sufficient evidence for the recording's authentication and admittance into evidence.  Thus, we conclude that the trial court did not abuse its discretion by admitting the recording over appellant's objection.

## Alternate Jurors in the Jury Room

Appellant also argues that the trial court erred by allowing the alternate jurors to briefly enter the jury room just prior to deliberations.  We first note that defense counsel's failure to object when the judge allowed the alternate jurors to briefly return to the jury room renders this issue unpreserved for appellate review.  *See James v. State*, 843 So. 2d 933, 936 (Fla. 4th DCA 2003) (holding that because the defendant failed to file a motion for a new trial based on juror misconduct, the alleged error was not preserved for appellate review).

If the trial court was informed when this occurred, remedial options were available to prevent any real or perceived prejudice.  If defense counsel made a timely objection, he could have requested that the court conduct an inquiry as to whether any of the jurors had improper contact with the alternate jurors during that time.  Defense counsel could have also requested that the court give special instructions to the jurors regarding the presence of the alternate jurors, or requested a mistrial.

Because appellant failed to object or move for a mistrial, this issue is reviewed under the fundamental error standard.  "Fundamental error is error that 'goes to the foundation of the case or the merits of the cause of action.'" *James v. State*, 843 So. 2d 933, 937 (Fla. 4th DCA 2003) (quoting *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998)). For the reasons set forth below, we find that the trial court did not commit fundamental error by allowing the alternate jurors to briefly return to the jury room.

Florida Rule of Criminal Procedure 3.280(a) specifically provides that "an alternate juror who does not replace a principal juror shall be discharged at the same time the jury retires to consider its verdict." We have long held that jury deliberations must be impartial, private, and secret. *See Berry v. State*, 298 So. 2d 491, 493 (Fla. 4th DCA 1974). However, Florida courts have made an important distinction between what constitutes jury *deliberations* as opposed to *preliminary organizational decisions*. Cases discussing this distinction have generally held that trial courts do not assume prejudice to the defendant whenever an alternate juror briefly enters the jury room at the conclusion of trial.

For example, in *Jacksonville Racing Ass'n, Inc. v. Harrison*, 530 So. 2d 1001, 1004 (Fla. 1st DCA 1988), the trial court asked the jury to retire, select a foreperson, and decide whether to begin deliberations that night or the next day. The trial court, however, failed to discharge the alternate juror, who remained present when the jury elected their foreperson. *Id.* On appeal, the First District affirmed the verdict, holding that "there appears to be no reasonable possibility that the alternate participated in any substantive deliberations, but was present during the foreperson's election and the decision on whether to begin deliberations." *Id.*

In this case, there is no indication that the jury was, or reasonably could have been, compromised. Even though the alternate jurors were not formally discharged before the jury retired to the jury room, they were not physically present in the jury room during actual deliberations. Therefore, we do not presume that the alternate jurors' brief return to the jury room constituted an external influence that amounted to prejudice. As the First District explained in *Morgan v. State*, 212 So. 3d 1104, 1106 (Fla. 1st DCA 2017):

> The jury was instructed that it must follow the law as set out in the instructions. Those instructions included an instruction that the "first thing" the jury should do was to select a foreperson. It is well-established that "'[a]bsent a finding to the contrary, juries are presumed to follow the instructions given them.'" *Johnson v. State*, 164 So. 3d 794, 797 (Fla. 1st DCA 2015) (quoting *Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 942 (Fla. 2000)).

*Id.*

Because the jury's first point of business in this case would have been to elect a foreperson, the alternate jurors' presence in the jury room for

two minutes certainly occurred before deliberations. Thus, we conclude that the alternate jurors' presence in the jury room was not so egregious as to require a reversal of appellant's conviction. *See Jennings v. State*, 512 So. 2d 169, 174 (Fla. 1987) (holding that no error occurred when the alternate juror was allowed to momentarily retire to the jury room because the record showed that "the alternate juror did not participate in the jury deliberations")*; see also Boblitt v. State*, 175 So. 3d 891, 893 (Fla. 1st DCA 2015) ("Only where the jury is engaged in pre-deliberation organizational activity may the alternate's presence be deemed harmless error."); *Bouey v. State*, 762 So. 2d 537, 540 (Fla. 5th DCA 2000) (stating that "a distinction should be made between instances where the alternate juror was present while the jury actually deliberated on its verdict and instances where the alternate juror was present only during the limited organizational activity that the jurors typically engage in before actual deliberations begin").

We agree with appellant that, as a general rule, a defendant is entitled to a mistrial if an alternate juror is present for any part of jury deliberations. *See Tello-Lugo v. State*, 47 So. 3d 968, 969 (Fla. 2d DCA 2010). There is, however, no substitute for common sense. This rule has no application where the defendant fails to object and the alternate jurors' presence in the jury room is inadvertent and momentary, occurring before the jury has commenced deliberations. We therefore reject appellant's contention that jury deliberations effectively begin at the moment in time when the jury retires from the courtroom, and that any incidental or brief contact between jurors and alternate jurors immediately after leaving the courtroom following the jury charge prejudicially contaminates the entire deliberative process.

In sum, the trial court did not err by allowing the alternate jurors to briefly enter the jury room before the jury effectively began deliberations. Because appellant has not shown that the alternate jurors' authorized presence in the jury room was anything other than (at worst) a brief intrusion, he is not entitled to a new trial.

*Affirmed.*

WARNER and CIKLIN, JJ., concur.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**

7