**UNITED STATES of America,**
**Appellee,**

v.

**Robert Fulton BEASLEY, Jr., et al.,**
**Appellants.**

**Nos. 71–1693 to 71–1697.**

United States Court of Appeals,
Tenth Circuit.

July 17, 1972.

Rehearing Denied Sept. 5, 1972.

W. R. Cathcart, Oklahoma City, Okl. (Don Manners and Dave Spradling, Oklahoma City, Okl., on the brief), for appellant, Robert Fulton Beasley, Jr.

George M. Ablah, Oklahoma City, Okl., for appellants, Ronald Gentry, Herman Mose Jones, Dave Green, and Ernest Eugene Bates.

Floy E. Dawson, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., with him on the brief), for appellee.

Before PHILLIPS, SETH and Mc-WILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is a direct appeal from a conviction under 21 U.S.C. § 174.

The trial to a jury was concluded, the jury was instructed, and it retired to deliberate. As it retired an alternate juror went along with the twelve jurors to the jury room. She participated in the vote to select a foreman, and voted to go to lunch. She was with the jury about twenty minutes after it retired. The court then realized that the alternate had not been discharged. Court was reconvened and the attorneys were advised that the alternate had retired with the twelve. Motion was made for a mistrial. The court then held a brief hearing to determine the extent the alternate had participated. At the conclusion of this hearing the motion for mistrial was denied.

This appeal raises the issue as to the thirteenth juror, and several other issues relating to the arrests and searches.

The issue considered first relates to the presence of the alternate juror in the jury room. The authorities on this point present two alternatives: (1) The trial court should attempt to evaluate the testimony of the jurors or some of them at a hearing to decide whether the alternate juror's participation exceeded some defined standard or extent; or (2) the inclusion of the alternate in *any* proceeding commenced by the jury itself after it retires to deliberate is ground for a mistrial. We are of the opinion that the basic sanctity of the jury's own *proceedings together with the complica-*tions and dangers which arise from a hearing as to the deliberations of the jury and the participation by the alternate dictate that the second of the above alternatives be followed.

When the case was submitted and the jury retired to deliberate, it then, with the selection of the foreman or with any other act to organize or plan the deliberation, began its own proceedings. Once these proceedings commenced, "the jury" consisted only of the prescribed number of jurors. The alternate then became as any other stranger to the proceedings regardless of whether she had been discharged. Thus the alternate juror was as any other outsider would be when she continued to sit with the jurors as they began their own proceedings. It is apparent that this alternate, up until the critical time, was just as qualified to sit in deliberation as was any other juror, but this qualification ceased whether or not she was discharged under Rule 24 of the Federal Rules of Criminal Procedure.

There is important authority which holds that if an alternate retires with the jury, the consequences of the error caused thereby will be examined to determine whether any prejudice to the defendant has been shown. Under this procedure a hearing is held and the ju-

rors, or some of them, are questioned to see how far their deliberations had progressed and how the alternate juror had participated therein. This is to see if the defendant was "prejudiced." In these circumstances it is difficult to see how a test of "prejudice" can be applied. The alternate was fully qualified to participate as were the others, she had been instructed with the others, and her participation can hardly be considered "prejudicial." Perhaps an attempt could be made to show the juror attempted to influence others by expressing an opinion or conclusion, but again this is not related to "prejudice." The borrowing of a "prejudice" standard from other constitutional situations does not seem to provide an appropriate standard or test.

Once the prescribed number of jurors becomes "the jury," then, and immediately, any other persons are strangers to its proceedings. Their presence destroys the sanctity of the jury and a mistrial is necessary.

The Government argues that the twelve-man jury is no longer constitutionally required. However, the alternate's presence on a six-man jury leads to the same complications and should lead to the same results as here reached. The history and nature of jury trials are extensively discussed in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L. Ed.2d 491, and in Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446.

The inquiry at a hearing under a standard which requires a showing of prejudice is itself a dangerous intrusion into the proceedings of the jury. The jury when organized is acting as a separate entity. The purpose sought to be achieved at such a hearing is not of sufficient importance to warrant such an inquiry in comparison to the possible harm or appearance of interference.

We have carefully considered United States v. Nash, 414 F.2d 234 (2d Cir.), and United States v. Hayutin, 398 F.2d 944 (2d Cir.) (the conviction of Nash on direct appeal). There the trial court held three days of hearings to determine the extent of the participation by the three alternates in the several days of the jury's deliberation. The trial court there concluded that there was no prejudice, and the Circuit Court agreed and passed on the several errors asserted by the defendant to have taken place during the hearing to decide the prejudice issue. The hearing showed that the alternate jurors were segregated during the deliberations from the "jury." Only occasional greetings were exchanged in the hotel or eating places where the two groups saw each other at some distance. In *Nash* there was no intrusion by the alternates into the proceedings of the jury since a separation was maintained.

In United States v. Virginia Erection Corp., 335 F.2d 868 (4th Cir.), the alternate jurors retired to the jury room and remained with the "jury" during its deliberations. The counsel for both parties had agreed to permit the alternate to retire with the jury but not to participate at all. This was done because one of the jurors was not feeling well toward the end of the trial. The Court of Appeals held that this was an attempt to waive the constitutional rights of the defendants but they had not personally consented thereto. The court there pointed out the provision in the rules for stipulation for submission to a lesser number of jurors but silence as to a greater number. The court also refers to the committee history on Rule 24 of the Federal Rules of Criminal Procedure. The court said in United States v. Virginia Erection Corp.: "In any event, the presence of the alternate in the jury room violated the cardinal principle that the deliberations of the jury shall remain private and secret in every case." The Oklahoma court in Brigman v. State, 350 P.2d 321 (Okl.Cr.), also discusses the issue and terms the presence of an alternate juror with the jurors who have retired to deliberate as "fundamental error." The thirteenth juror there voted on one ballot for acquittal.

See also People v. Bruneman, 4 Cal. App.2d 5, 40 P.2d 891.

This inquiry is limited to determining whether the jury has begun its function as a separate entity. The facts here show that this point had been passed and the alternate was present. Thus a mistrial is necessary.

The cases are reversed with directions to grant appellants' motion for a mistrial.