**Robert A. JOHNSON,
Petitioner-Appellant,**

v.

**Jack R. DUCKWORTH, Warden,
Respondent-Appellee.**

No. 80–1873.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1981.

Decided May 28, 1981.

---

Charles Crutchfield, Notre Dame, Ind., for petitioner-appellant.

Bruce L. Kamplain, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before SWYGERT, BAUER and CU-DAHY, Circuit Judges.

PER CURIAM.

Appellant Robert A. Johnson was tried in Indiana state court for first degree murder. The jury convicted him of second degree murder. His conviction was affirmed by the Indiana Supreme Court, *Johnson v. State*, 267 Ind. 256, 369 N.E.2d 623 (1977), *cert. denied sub nom. Johnson v. Indiana*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978).

Johnson brought this petition for writ of habeas corpus, 28 U.S.C. § 2254, in the United States District Court for the Southern District of Indiana, challenging the state trial court's instruction to the alternate juror to attend, but not participate in, the jury's deliberations.[1] Johnson contended the alternate's presence during jury deliberations violated his rights under the sixth and fourteenth amendments to the Constitution.[2] The district court dismissed the petition and Johnson appealed.

---

1. The trial court included in its jury instructions the following instruction directed to the alternate:

   Alternate juror, Harold Lett, you will retire with the jury. But unless, and until, we excuse a juror and you are directed to actively serve, you are not to vote or participate in the deliberations. You should, however, listen, so that should you be called upon to serve, you will have the benefit of the preceding discussions.

2. Johnson also alleged in his petition that the state trial court should have granted a mistrial because the jury observed him in shackles on two occasions. Since Johnson does not press that issue on appeal, we do not address it.

   We note, in addition, that Johnson exhausted his state remedies with respect to both claims for habeas relief as required by section 2254. *Johnson v. State, supra*, 267 Ind. at 258–60, 369 N.E.2d 623.

The question presented, whether a state court may constitutionally require an alternate juror to observe the jury's deliberations, over the defendant's objection, appears to be one of first impression.

■ It is of course settled that in all serious criminal cases, state or federal, the sixth and fourteenth amendments to the Constitution entitle the accused to a trial by jury. *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). It is equally clear that any jury system is composed of many discrete features which may vary from forum to forum without running afoul of sixth amendment guarantees. Thus, for example, the states are not constitutionally bound to employ twelve-member juries in serious criminal cases, *Williams v. Florida*, 399 U.S. 78, 103, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970), or to require that twelve-member juries reach unanimous verdicts, *Apodaca v. Oregon*, 406 U.S. 404, 411, 92 S.Ct. 1628, 1633, 32 L.Ed.2d 184 (1972). On the other hand, states may not constitutionally employ juries of fewer than six members, *Ballew v. Georgia*, 435 U.S. 223, 228, 98 S.Ct. 1029, 1033, 55 L.Ed.2d 234 (1978), and they are constitutionally bound to require unanimity of six-member juries, *Burch v. Louisiana*, 441 U.S. 130, 138, 99 S.Ct. 1623, 1628, 60 L.Ed.2d 96 (1979). To determine whether a certain feature of a jury system comports with constitutional requirements, "the relevant inquiry ... must be the function that the particular feature performs and its relation to the purposes of the jury trial." *Williams v. Florida, supra*, 399 U.S. at 99–100, 90 S.Ct. at 1905. States another way, where a state's practice "presents a ... threat to preservation of the substance of the jury trial guarantee," *Burch v. Louisiana, supra*, 441 U.S. at 138, 99 S.Ct. at 1628, it must be struck down.

Johnson contends that any person who is not permitted to participate in the jury's discussion and vote must be considered a stranger to the deliberations, and that allowing any stranger to observe deliberations violates the "cardinal principle" that jury deliberations must be secret and private in every case.

Johnson relies on *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978), *United States v. Beasley*, 464 F.2d 468 (10th Cir. 1972), and *United States v. Virginia Erection Corp.*, 335 F.2d 868 (4th Cir. 1964). The courts in these cases held the presence of the alternate juror during deliberations to be *per se* reversible error in federal criminal trials.[3] The primary basis for this conclusion was Federal Rule of Criminal Procedure 24(c), which requires that the alternate be dismissed before the jury retires to deliberate. However, the courts in all three of the above cases also expressed concern that the alternate's presence could taint the "sanctity" of the jury deliberations,[4] or that it "might have affected the verdict and did violate the privacy and secrecy of the jury."[5] The courts' dicta indicate a perception that the privacy of jury deliberations is so essential to the "substance of the jury trial guarantee" that when strangers are permitted to intrude upon such privacy, an error of constitutional dimension is committed.

■ The necessity for privacy and secrecy in jury deliberations lies in the danger that "[f]reedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." *Clark v. United States*, 289 U.S. 1, 13, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). The jury's duty is to reach a conclusion of guilt or innocence after thorough consideration, through full and frank discussion, of all the evidence presented. This

---

**3.** *Contra, Potter v. Perine*, 545 F.2d 1048 (6th Cir. 1976) (alternate's presence during deliberation is not *per se* reversible error; it is only reversible error if defendant is actually prejudiced thereby); *United States v. Allison*, 481 F.2d 468 (5th Cir. 1973), *cert. denied*, 416 U.S.

982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974) (same).

**4.** *Beasley*, 464 F.2d at 470.

**5.** *Chatman*, 584 F.2d at 1361.

open, thoughtful examination of the evidence is what makes meaningful the "interposition between the accused and his accuser of the commonsense judgment of a group of laymen," which is the "essential feature" of trial by jury.[6] We agree that to stifle free debate in the jury room would hinder significantly the jury's ability to reach a "commonsense judgment." It follows that if an intrusion into the jury's privacy has, or is likely to have, the effect of stifling such debate, the defendant's right to trial by jury may well have been violated.

At the same time, we would emphasize that jury privacy is not a constitutional end in itself; it is, rather, a means of ensuring the integrity of the jury trial. Indeed, in some cases jury privacy must be breached in the name of protecting the defendant's right to a jury trial—to determine, for example, whether a juror's vote was predicated upon a bribe rather than upon a conscientious evaluation of the evidence. See, e. g., Clark v. United States, supra, 289 U.S. at 14, 53 S.Ct. at 469.

■ The question we must decide, therefore, is whether the presence of the alternate juror is the sort of invasion of the jury's privacy that will tend to stifle the jury's debate, thus endangering the defendant's right to trial by jury.[7] We hold that it is not.

Alternate jurors, though excluded from participation in deliberation and vote, are in all other respects indistinguishable from regular jurors. They are permitted to serve only after a *voir dire* examination in which they affirm, under oath, that they harbor no bias toward the prosecution or the defendant. Like regular jurors, they are subject to peremptory challenge by either side. Furthermore, their exposure to the evidence in the case is exactly the same as that of the regular jurors. Offers of proof and arguments on admissibility of evidence are submitted outside the hearing of alternates and regulars alike, just as alternates and regulars alike are instructed to disregard improper testimony. When the regular jury is sequestered, so are the alternates. The attorneys' closing arguments, and the judge's instructions on the law, are given to the alternates and regulars together. Thus the alternate who accompanies the regular jurors into deliberations has no more and no less information about the case than any other juror, and is no more biased or unduly influenced than any other juror.

Other "strangers" to the regular jury stand in stark contrast to the alternate. In *People v. Knapp*, 42 Mich. 267, 3 N.W. 927 (1879), on which Johnson relies, the Michigan Supreme Court ordered a new trial where the court bailiff had attended the jury deliberations. The Court stated:

> Now the law provides no process for ascertaining whether the officer is indifferent and without prejudice or favor as between the parties; and as it is admitted he has no business in the room, it may turn out that he goes there because of his bias, and in order that he may report to a friendly party what may have been said to his prejudice, or that he may protect him against unfavorable comment through the unwillingness of jurors to criticise freely the conduct and motives of one person in the presence of another who is his known friend. Or the officer may be present with a similar purpose to protect a witness whose testimony was likely to be criticised and condemned by some of the jurors.

6. *Williams v. Florida, supra*, 399 U.S. at 100, 90 S.Ct. at 1905.

7. We recognize that in so posing the question we assume that the alternate's presence does constitute an invasion of the jury's privacy. The State of Indiana argues the alternate is not a stranger to the jury and therefore does not invade its privacy at all. This contention creates a legal fiction, as may be seen in the present case: the alternate was certainly *treated* as a stranger to the regular jury when he was instructed not to participate in any way in the jury's deliberations. We find it unnecessary to indulge in this fiction because the constitutional right at stake is the jury trial, not jury privacy. For that reason, we think it proper to focus attention upon whether this particular encroachment on jury privacy is harmful.

*Id.*, 3 N.W. at 929–30; followed, *Rickard v. State*, 74 Ind. 275, 277–78 (1881). These objections are no doubt applicable to outsiders other than bailiffs; they cannot, however, be said to apply to alternate jurors. We do not agree that alternate jurors pose the inherent risk of influencing the jury's judgment, or inhibiting its debate, that is posed by the presence of other strangers.

Of additional significance is the state's purpose in requiring the alternate to be a silent observer of the jury's deliberations.[8] The role of the alternate is to take the place of a regular juror who becomes ill or otherwise unable to serve. Should substitution become necessary after the jury has retired to deliberate, the alternate who has been present all along will be fully apprised of all the arguments put forth prior to the substitution. The alternate may then readily engage in further debate and vote according to a full appreciation of the case.

This solution to the incapacitation of a regular juror during deliberations seems quite practical. Indeed, it may be preferable to the alternatives. One alternative is to keep the alternate juror "on call"—that is, excluded from deliberations until a substitution is necessary. When substitution is made after several hours of deliberation, the regulars must summarize their foregoing debate for the alternate, and in such cases there is a risk that the alternate's vote will be based upon a less-than-thorough examination of all the evidence and its inferences. The same risk exists where an alternate is dismissed and later recalled because of a regular juror's illness. Yet substitution after segregation has been held permissible.[9]

Another alternative is to allow the remaining jurors to decide the case, without substitution. It is not clear that this option would always pass constitutional scrutiny,[10] and in any event, when a state legislature determines that criminal cases should be tried to a specified number of jurors, we think it preferable to follow this mandate to the extent possible. A final alternative, of course, is to declare a mistrial when a juror becomes ill during deliberations. But this solution can be devastating to a defendant, who, for example, may have completely exhausted his or her ability to pay a retained lawyer and would therefore be forced to repeat the draining process of an entirely new trial, with a court-appointed attorney unfamiliar with the case. None of these alternatives seems more faithful to the jury-trial guarantee than the approach taken here which seeks to ensure decision of the case by the legislatively ordered number of jurors, each of whom has been properly tested for bias and each of whom has been equally exposed to the evidence and to the debate over the evidence.

In *Henderson v. Lane*, 613 F.2d 175 (7th Cir. 1980), this court remarked that "perhaps no procedure will be perfect for dealing with these difficult and unforeseeable circumstances . . . ." *Id.* at 179. The procedure adopted by the Indiana court in this case may not be perfect; but we hold, in light of the above considerations, that it cannot be said to have deprived Johnson of his constitutional right to trial by jury.

The order of the district court is affirmed.

---

**8.** In *Ballew v. Georgia, supra,* the Supreme Court weighed the state's purpose in providing for five-member juries against the individual defendant's sixth amendment rights. *Id.,* 435 U.S. at 243–44, 98 S.Ct. at 1040–1041. We think a similar inquiry into the state's purpose is appropriate here.

**9.** *E. g., Henderson v. Lane,* 613 F.2d 175, 177–79 (7th Cir.), *cert. denied,* 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980) (alternate dismissed but later recalled); *United States v. Nash,* 414 F.2d 234 (2d Cir.), *cert. denied,* 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969) (alternate kept "on call" in room separate from jury prior to substitution); *Leser v. United States,* 358 F.2d 313 (9th Cir.), *cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966) (same).

**10.** Where the jury has only six members to begin with, *Williams v. Florida,* and *Burch v. Louisiana,* would seem to preclude decision of the case by the remaining five jurors.