843 A.2d 64

Dontee **STOKES**

v.

**STATE of Maryland.**

**No. 47, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 18, 2004.

Lisa J. Sansone (Law Office of Lisa Sansone of the Law Office of Lisa J. Sansone, Warren A Brown of Warren A. Brown, P.A. of Baltimore), on brief for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

RAKER, Judge.

This criminal case presents issues relating to a defendant's right to a trial by a jury of twelve jurors and the treatment of alternate jurors in a case in which the defendant has entered a plea of not criminally responsible and requests a bifurcated trial. In the guilt/innocence stage of the trial, the Circuit Court for Baltimore City retained the four alternate jurors and permitted them to participate in the juror deliberations. Appellant's argument is that the trial court committed revers-

ible error by permitting sixteen jurors to enter the jury room and deliberate on the guilt/innocence phase of his trial. We agree with appellant that it was reversible error to permit the four alternate jurors to be present in the jury room during deliberations and shall reverse the convictions and order a new trial.

## I.

Dontee Stokes, appellant, was indicted by the Grand Jury for Baltimore City with the offenses of attempted first degree murder; assault; reckless endangerment; use of a handgun in a crime of violence; wearing, carrying, or transporting a handgun; carrying or knowingly transporting a handgun in a vehicle; and discharging a firearm within city limits. He entered a plea of not guilty and not criminally responsible pursuant to Maryland Rule 4–242(a). The State alleged that appellant shot and wounded Maurice Blackwell, appellant's priest when appellant was a young boy. In his statement to the police, appellant admitted shooting Blackwell. At trial, appellant maintained that from the time he was thirteen years old until he was seventeen years old, Blackwell had repeatedly sexually abused him and that as a result, in addition to lacking criminal responsibility, appellant lacked the ability to form specific intent at the time of the shooting.

The trial commenced before a jury in the Circuit Court for Baltimore City on December 10, 2002. Pursuant to Maryland Rule of Procedure 4–314,[1] appellant elected to proceed to trial in a bifurcated proceeding, and in accordance with the Rule, the court commenced with the guilt/innocence phase. In his opening statement to the jury, defense counsel stated that "we will plead guilty on possession of the handgun and we'll take whatever wrath the judge imposes on us." As to the remain-

---

1. Maryland Rule of Procedure 4–314 provides that a defendant who has entered pleas of both not guilty and not criminally responsible by reason of insanity, and who has elected a jury trial, may move for a bifurcated trial in which the issue of criminal responsibility will be heard separately from the issue of guilt. The issue of guilt shall be tried first.

ing charges, counsel asked the jury to find appellant not guilty.

At the conclusion of all the evidence in the guilt/innocence phase of the trial, and following jury instructions and closing arguments, the court instructed the jurors as follows:

"Madam Forelady, ladies and gentlemen, under the Rule 4–314 that creates a bifurcated trial, at the present time, you are all jurors. You are not both jurors and alternates, even though we so designated you.

\* \* \*

Now, when you have a verdict, Madam Forelady, make sure it is unanimous. Make sure that all sixteen of you agree with the verdict. Mark on the verdict sheet not guilty or guilty as to each of the nine counts. Be careful that everybody is unanimously on board, because once the verdict is announced, either side can ask for a poll. In the poll, the clerk will ask jurors two through sixteen, you've heard the verdict of your Forelady, is that your verdict?

If anybody says no or maybe, then you have to continue deliberations. It is only when all sixteen of you are prepared to publicly defend the same verdict do we have a judgment sufficient to end this phase of the case and begin the next phase of the case, whatever that next phase is."

Appellant's counsel objected to the alternate jurors being permitted to deliberate. The trial court overruled the objection, responding that, according to Rule 4–314, a bifurcated trial is a single continuous trial, in two stages, and the Rule requires that the alternate jurors must be retained throughout the trial. The sixteen person jury deliberated for about one half-hour that day. Following a weekend recess, the jury continued deliberating. After about two hours of deliberations, the jury sent a note to the court with the question, "Do alternates count?"

The jury note regarding the role of alternate jurors, for the first time, sparked a discussion between the court and counsel of the role of alternate jurors in a bifurcated case under Rule

4–314. Focusing on the language of the Rule that "The court shall appoint at least four (sic) alternate jurors, who shall be retained throughout the trial," the court noted as follows:

> "So, in what I believe to be a case of first impression in Maryland, because there is no annotation in the rule since the rule was passed in July 1989, that means that alternates deliberate on the criminal agency phase, and then are dismissed when it's time to deliberate for the not criminally responsible phase. Because (b)(5) says, 'Trial issue of criminal responsibility, (A), except as otherwise provided in paragraph (B) or (C) of the subsection, the issue of criminal responsibility shall be tried before the same jury that tried the issue of guilt. Any juror who dies, becomes incapacitated, disqualified or is otherwise discharged before the jury begins to deliberate in the criminal responsibility phase shall be replaced by an alternate juror in the order of selection.' So, if they're there in the jury room while the deliberations are going on what do they do other than deliberate."

The court considered two choices: Should the alternate jurors stay in the jury room as non-participants so that they are aware of the deliberations in case they are needed as jurors in the insanity phase, or do they function and participate as jurors in the guilt/innocence phase? After an extended discussion, the court decided to instruct the jury that the alternates were to be mere observers. The court responded to the jury inquiry as to whether alternate jurors vote as follows:

> "[W]e've decided after lengthy research and argument to do the following, to have the twelve jurors deliberate, and to have the four alternates in the jury room as observers so that they'll know what went on for the next phase of the case, where they might actually become jurors if someone can't complete it. So the best that we can tell from what the discussion before the Rules Committee was and from the wording of the Rule, is that alternates are not to be discharged because they're needed for the next phase if there's going to be a next phase. But by the same token, it might be safer not to have the alternates deliberate or vote.

So Mister and Madams Alternate, I know that kind of puts a burden on you to kind of sit there and wait to find out whether you get to play a role or not, but it's better for you to be in there knowing what's going on, than out and not knowing what's going on. So we're going to ask you to perform that function. So with that——it has to be a unanimous decision of the twelve of you, and when we poll the jury it'll be the poll of the twelve of you. The alternates are basically just in a holding pattern as observers so that they know what went on in case one or more of them becomes a juror if we reach the next phase. So with that you may now retire to resume your deliberations with those guidelines. Thank you."

Defense counsel reiterated his objection to the presence of alternates in the jury room.

The jury returned a verdict of not guilty of attempted murder, assault, reckless endangerment, and use of a handgun in a crime of violence. The jury convicted appellant of three counts: wearing, carrying or transporting a handgun; wearing, carrying or transporting a handgun in a vehicle; and discharging a firearm within the city limits.

The next day, appellant withdrew his plea of not criminally responsible in return for an agreement with the State that the State would recommend a sentence of three years incarceration, with all but eighteen months suspended, three years probation, and full credit against the sentence based on the time appellant spent in home detention pretrial. The court imposed a sentence in accord with the State's recommendation.

Appellant noted a timely appeal to the Court of Special Appeals. Prior to consideration by that court, this Court issued a writ of certiorari to consider the issues presented in Stokes' appeal. 376 Md. 543, 831 A.2d 3 (2003).

## II.

The right to a trial by jury, of twelve persons, has been part of the common law for centuries, along with the require-

ment of unanimity. The right to trial by jury is guaranteed by the Maryland Declaration of Rights and the Maryland Rules, as well as the United States Constitution. *See Kawamura v. State,* 299 Md. 276, 473 A.2d 438 (1984). Article 5 of the Maryland Declaration of Rights provides, in pertinent part, "That the Inhabitants of Maryland are entitled to ... trial by Jury...." Article 21 of the Declaration of Rights provides, in pertinent part, "That in all criminal prosecutions, every man hath a right ... to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." Article 23 of the Declaration of Rights provides, in pertinent part, "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." Article 24 of the Declaration of Rights provides, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges ... or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." The reference to "jury" in our organic laws, refers to a jury as constituted under the common law, unless the contrary plainly appears. *See State v. Kenney,* 327 Md. 354, 361, 609 A.2d 337, 340 (1992); *State v. Ledger,* 175 Wis.2d 116, 499 N.W.2d 198, 202 (Ct.App.1993) (citing *State v. Gollmar,* 32 Wis.2d 406, 145 N.W.2d 670, 671–72 (1966)). *Cf. Bryan v. State Roads Comm'n,* 356 Md. 4, 14, 736 A.2d 1057, 1061 (1999) (holding that the 1992 amendment to Article 5 of the Maryland Declaration of Rights permits a six person jury in all cases except criminal cases); *Thompson v. State,* 278 Md. 41, 53, 359 A.2d 203, 210 (1976) (noting that common law right to a jury trial exists absent a rule or statute taking the right away where it would be constitutionally permissible to do so).

Although a jury was comprised of twelve persons under the common law, the United States Supreme Court has made it clear that the Sixth and Fourteenth Amendments to the United States Constitution do not require a jury of twelve persons, although the constitutional right to a jury trial guarantees the right to have at least six jurors. *See Ballew v.*

*Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978). Judge McAuliffe, writing for this Court in *State v. Gorwell*, 339 Md. 203, 661 A.2d 718 (1995), observed as follows:

> "Although at one time in the jurisprudential history of this country it was widely believed that the constitutional right to a jury trial guaranteed by the Sixth and Fourteenth Amendments included the right to insist upon a jury of twelve persons, the Supreme Court has declared that not to be the case. In *Williams v. Florida*, 399 U.S. 78, 86, 90, 90 S.Ct. 1893, 1898, 1900, 26 L.Ed.2d 446 (1970), the Court opined that the fixing of the number of jurors at twelve 'appears to have been a historical accident,' and that this feature of the jury had not been immutably codified into the Constitution. The Court was careful to point out, however, that the States were at liberty to require twelve person juries.
>
>> 'We do not mean to intimate that legislatures can never have good reasons for concluding that the 12–man jury is preferable to the smaller jury, or that such conclusions—reflected in the provisions of most States and in our federal system—are in any sense unwise. Legislatures may well have their own views about the relative value of the larger and smaller juries, and may conclude that, wholly apart from the jury's primary function, it is desirable to spread the collective responsibility for the determination of guilt among the larger group. In capital cases, for example, it appears that no State provides for less than 12 jurors—a fact that suggests implicit recognition of the value of the larger body as a means of legitimating society's decision to impose the death penalty. Our holding does no more than leave these considerations to the Congress and the States, unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number that can constitute a jury.'
>> *Id.* at 103, 90 S.Ct. at 1907."

*Id.* at 212–13, 661 A.2d at 723 (footnote omitted).

While trial by a jury of twelve is not mandated by the United States Constitution, the Maryland Constitution and the

Maryland Rules require a jury of twelve in criminal cases unless a lesser number is agreeable to both the State and the defendant. Maryland Rule 4–311 provides, unequivocally, that a jury shall consist of twelve persons unless the parties stipulate, in writing or on the record, that the jury shall consist of any number less than twelve. *See State v. Kenney,* 327 Md. 354, 609 A.2d 337 (1992). Rule 4–312 addresses jury selection as well as alternate jurors generally. Rule 4–314 addresses the procedure to be followed when the defendant interposes the defense of not criminally responsible by reason of insanity and also addresses alternate jurors. Rule 4–312(b)(3) provides that an alternate juror shall replace a juror who is unable to perform a juror's duty before the time the jury retires to consider its verdict. The Rule also provides that "[a]n alternate juror who does not replace a juror shall be discharged when the jury retires to consider its verdict." Rule 4–312(b)(3). Maryland Code (2002, 2003 Cum.Supp.) § 2–303 of the Criminal Law Article [2] addresses the sentencing procedure in capital cases. Section 2–303(d) addresses jury composition and alternate jurors.

When a defendant has entered pleas of not guilty and not criminally responsible, the procedure as to alternate jurors is more tricky. A bifurcated trial is a single continuous trial in two stages. Rule 4–314(b)(1). The court must appoint at least two alternates, who shall be retained throughout the trial. Rule 4–314(b)(4). Rule 4–314(b)(2) sets out the sequence of the trial: the issue of guilt shall be tried first, followed by the issue of criminal responsibility, to be tried as soon as practicable after the jury returns a verdict of guilt on any charge. The trial judge aptly noted that this case presents an issue of first impression and an interpretation of Rule 4–314 as it relates to the use of alternate jurors in a bifurcated criminal responsibility case. The Rule is silent as to how the alternate jurors are to be treated in the two phases of the

---

**2.** All future references shall be to the Criminal Law Article of the Maryland Code (2002, 2003 Cum.Supp.).

trial.[3]

We hold that the trial court erred in sending the alternate jurors into the jury room to deliberate on the guilt/innocence phase of the trial.[4] A criminal defendant's constitutional right to a jury trial under the Maryland Constitution means a trial by twelve people, unless the defendant stipulates in writing, or on the record, to a jury of less than twelve people. *See* Rule 4–311(b).[5]

---

**3.** This case has an additional wrinkle because, as we have noted, appellant withdrew his plea of not criminally responsible after the jury returned its verdict of not guilty on the major criminal charges and appellant negotiated a sentence recommendation on the counts on which he was convicted. Therefore, the trial court never reached the issue of reintroducing the alternates back into the jury.

**4.** The presence of alternate jurors in the jury room during deliberations is generally regarded as error. *See, e.g., State v. Rocco,* 119 Ariz. 27, 579 P.2d 65, 66–67 (Ct.App.1978); *People v. Boulies,* 690 P.2d 1253, 1255–56 (Colo.1984); *State v. Murray,* 254 Conn. 472, 757 A.2d 578, 581 (2000); *Berry v. State,* 298 So.2d 491, 493 (Fla.Dist.Ct.App.1974); *Johnson v. State,* 235 Ga. 486, 220 S.E.2d 448, 454 (1975); *Commonwealth v. Smith,* 403 Mass. 489, 531 N.E.2d 556, 558–61 (1988); *Luster v. State,* 515 So.2d 1177, 1180 (Miss.1987); *State v. Crandall,* 452 N.W.2d 708, 709–11 (Minn.Ct.App.1990); *State v. Scrivner,* 676 S.W.2d 12, 14 (Mo.Ct.App.1984); *State Highway Comm'n v. Dunks,* 166 Mont. 239, 531 P.2d 1316, 1317–18 (1975); *State v. Coulter,* 98 N.M. 768, 652 P.2d 1219, 1221 (Ct.App.1982); *State v. Bindyke,* 288 N.C. 608, 220 S.E.2d 521, 531 (1975); *Yancey v. State,* 640 P.2d 970, 971 (Okla.Crim. App.1982); *Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746, 749 (1949); *Patten v. State,* 221 Tenn. 337, 426 S.W.2d 503, 506–07 (1968); *State v. Cuzick,* 85 Wash.2d 146, 530 P.2d 288, 289–90 (1975); *State v. Lightner,* 205 W.Va. 657, 520 S.E.2d 654, 659 (1999). *Contra People v. Valles,* 24 Cal.3d 121, 154 Cal.Rptr. 543, 593 P.2d 240, 243 (1979) (alternate may remain in jury room if defendant so stipulates); *Wilcoxen v. State,* 619 N.E.2d 574, 577 (Ind.1993) (alternate jurors may attend deliberations as long as they are instructed not to participate); *State v. Grant,* 221 Mont. 122, 717 P.2d 562, 566–68 (1986) (distinguishing *Dunks, supra* ). *See generally Koch v. Rist,* 89 Ohio St.3d 250, 730 N.E.2d 963 (2000).

**5.** The allowance for the substitution of an alternate juror when a regular juror is unable to deliberate on the case was borne of judicial economy to avoid retrials, because when the jury is less than twelve jurors, a mistrial must be declared unless the parties consent to proceeding with eleven jurors. *See Pollitt v. State,* 344 Md. 318, 324, 686 A.2d 629, 632 (1996). The same rationale does not apply when more than twelve jurors are in the jury room. Unlike several other states,

The trial court went down the wrong path when it concluded that the word "retained" in Rule 4–314(b)(4) meant that alternate jurors must go into the jury room and deliberate along with the jury during the guilt/innocence phase.[6] The trial court realized that it had erred in permitting the alternates to deliberate and attempted to cure the error by permitting them to remain in the jury room but not to participate in the deliberations. Once the additional jurors entered the jury room with the jurors to consider the verdict, and the deliberations commenced, the error could not be cured. As we have indicated, the presence of the alternate jurors during the jury deliberations is, without any doubt, a deviation from Rule 4–312(b)(3). Appellant objected to the alternates' participation. The deliberations of the regular jurors are of no concern to the alternates; if, after deliberations have commenced, a regular juror becomes unable to complete the deliberations, under Maryland law, unlike the procedure in some other states, an alternate juror may not be substituted. There can

---

Maryland permits the substitution of an alternate juror only before the jury begins to deliberate on the case, and not after deliberations have commenced. For statutes and rules in states permitting substitutions, see, for example, Ariz. R.Crim. P. 18.5; Cal.Penal Code § 1089 (West 1985, 2004 Supp.); Ga.Code Ann. § 15–12–172 (2001, 2003 Supp.); Idaho Crim. R. 24; Ind. R. Trial P. 47; Kan. Stat. Ann. § 22–3412 (1995, 2002 Supp.); Mass. Ann. Laws ch. 234 § 26B (Law. Co-op 2000, 2003 Supp.); Nev.Rev.Stat. § 175.061 (2002); N.H.Rev.Stat. Ann. § 500–A:13 (1997, 2003 Supp.); N.J. R. Court § 1:8–2; Wash. Crim. R. 6.5. We express no opinion as to whether a defendant may stipulate to more than twelve persons on the jury. In the case *sub judice*, the record is clear that appellant objected to more than the twelve jurors deliberating on the case.

**6.** The State conceded at oral argument that the trial court committed error in permitting the four alternate jurors to deliberate with the twelve "regular" jurors and then, after a few hours of deliberation, instructing them merely to observe the proceedings without participating in the deliberations. In light of the State's acknowledgment that the procedure followed by the trial court was error, we do not address the State's argument in its brief that the word "retained" in Rule 4–314 should be construed to permit alternate jurors to enter the jury room but to remain as passive observers because such a procedure would serve the purpose of permitting alternate jurors to understand the course of deliberations should they be required to participate during subsequent deliberations on criminal responsibility.

be no doubt that, despite his good intentions and attempt to cure the error, the judge erred by allowing the alternates to attend any part of the jury deliberations.[7] The trial court clearly erred.

## III.

The remaining question is whether there should be any remedy, and, if so, what the remedy should be, in light of the values sought to be protected by Rule 4–311 and the judge's instructions to the jury—first, instructing them to fully participate in the deliberations and then, instructing them not to participate but simply to observe the deliberations.

The State's principal argument is that appellant's convictions on the handgun counts should not be reversed because he was not prejudiced by the presence of the alternate jurors

---

**7.** A bifurcated proceeding in which a defendant pleads not criminally responsible based on insanity is similar to a death penalty proceeding in that the second phase of deliberations occurs if and when the jury finds the defendant guilty in the merits phase—the guilt/innocence part of the proceedings. Notably, the language of Rule 4–314(b)(4) closely parallels that of Criminal Law Article § 2–303(d), which governs the treatment of alternate jurors in a capital case. The Rules of Procedure contemplate that alternate jurors in a bifurcated criminal responsibility trial will be treated in a similar manner as in death penalty trials.

The trial judge referred to the minutes of the Court of Appeals Standing Committee on Rules of Practice and Procedure, February 10, 1989, when Rule 4–314 was adopted, noting that the minutes reflected that "alternates used in bifurcated trials will be treated similar to alternates in death penalty trials." Although Criminal Law Article § 2–303(d) does not state explicitly how alternates are to be treated, § 2–303(d)(2) requires that alternate jurors in capital cases "be retained throughout the proceedings under any restrictions that the judge imposes." Section 2–303(d)(4) provides that alternates "may not replace a juror who is discharged during the actual deliberations of the jury on the guilt or innocence of the defendant or on sentencing." The prohibition on replacing a juror with an alternate during any phase of the deliberations, by implication, prohibits the presence of alternate jurors in the jury room. It has been the practice in this State to keep alternate jurors separate and apart from the regular jury during the first phase of deliberations, and when there is a guilty verdict qualifying the defendant for the death penalty, the alternate jurors rejoin the regular jury for the sentencing phase. The same practice should be followed with alternate jurors in bifurcated criminal responsibility proceedings.

in the jury room. The State maintains that a presumption of prejudice standard is inapplicable and that the trial court's error was harmless. Alternatively, the State argues that even if a presumption of prejudice applies, the presumption has been rebutted. The State's argument relies on appellant's counsel's remark in opening statement to the jury that Stokes "will plead guilty on possession of the handgun" and that Stokes testified under oath at the trial that he committed acts constituting those crimes. In other words, the States argues that, assuming the trial court error, and assuming that a presumption of prejudice is applicable to such error, the presumption was rebutted and the convictions should be affirmed.

Appellant argues that the trial court's error violated the Maryland Rules and his right to a trial by jury as guaranteed by the Maryland Declaration of Rights and the United States Constitution. He maintains that the presence and input of alternates in the jury room violated the principle that jury deliberations are to be impartial, private, and secret. He asserts that the trial court's error in permitting the jurors first to deliberate with the regular jury, and then to act merely as observers, creates a presumption of prejudice, which in this case cannot be rebutted and thus a new trial is required. Distinguishing the Supreme Court case of *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993),[8] and relying primarily on *Jenkins v. State*, 375 Md. 284, 825 A.2d 1008 (2003) and *Hayes v. State*, 355 Md. 615, 735 A.2d 1109 (1999), appellant argues that "the alternate jurors were no different than third parties who invaded the privacy, impartiality and secrecy of the jury ... expos[ing] the jury to

---

8. In *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court clarified the standard for plain error in federal courts, under Federal Rule of Procedure 52(b), holding that the plain error rule applies when alternate jurors join regular jurors in the jury room when jury deliberations begin, *without objection*. The instant case is not a plain error case; appellant objected to the additional jurors and the issue was preserved for appellate review.

impermissible outside influences, which is inherently prejudicial to Appellant."

We have not had the occasion to determine the effect of a violation of Rule 4–311(b) and whether the presence of alternate jurors in the jury room after deliberations have begun constitutes presumptive prejudice or if it constitutes fundamental error. *See* Annot., *Presence of Alternate Juror in Jury Room as Ground for Reversal of State Criminal Conviction*, 15 A.L.R.4th 1127 (1982, 2003 Supp.). Our jurisprudence related to the right to a jury trial has zealously guarded against intrusions into the jury room and jury deliberations. The Maryland Rules, implementing the right to a jury trial, clearly distinguish between alternate jurors and regular jurors and no rule or statute permits more than twelve into the jury room during deliberations.

An alternate juror has been likened to a stranger to the proceedings. *See Commonwealth v. Smith*, 403 Mass. 489, 531 N.E.2d 556, 559 (1988); *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846, 851 (1991). Alternate jurors, in the literal sense, are not "strangers" to the proceedings. They are not strangers in the sense that they are selected in the same manner as regular jurors, subjected to the same voir dire and tests of impartiality, and hear the same evidence, jury instructions, and closing arguments. *See* Rule 4–312(b) (stating that "alternate juror shall be drawn in the same manner, have the same qualifications, be subject to the same examination, take the same oath, and have the same functions, powers, facilities, and privileges as a juror)"; *State v. Lightner*, 205 W.Va. 657, 520 S.E.2d 654, 660 (1999). They clearly are *different* than regular jurors, however, and in a sense, their status is that of a third party. " '[A]lternate jurors,' as long as they remain alternates, really are not jurors." *Smith*, 531 N.E.2d at 559. The United States Court of Appeals for the Tenth Circuit addressed the status of an alternate juror, and in holding that an accused's right to an impartial jury had been violated, stated as follows:

"Once these proceedings [have] commenced, 'the jury' consisted only of the prescribed number of jurors. The alternate then became as any other stranger to the proceedings regardless of whether she had been discharged.... Once the prescribed number of jurors becomes 'the jury,' then, and immediately, any other persons are strangers to its proceedings. Their presence destroys the sanctity of the jury...."

*United States v. Beasley,* 464 F.2d 468, 469 (10th Cir.1972).

■ In addition to breaching the sanctity and privacy of the jury deliberations, the participation of an alternate is disapproved for another reason—the lack of accountability. An alternate juror, as an unauthorized individual, is not committed to the decision and is not faced with the ultimate and weighty responsibility to decide the case. *See State v. Cuzick,* 85 Wash.2d 146, 530 P.2d 288, 289–90 (1975). The notion of juror accountability has been expressed as follows:

"A fundamental underpinning of our jury system, both in the criminal and civil contexts, is that accountability should exist with each of the decision-makers. By participating, the alternate was able to influence the other jury members, the actual decision-makers, while remaining unrestrained by any actual responsibility regarding the outcome of the case. Without this type of accountability, faith that the alternate made a conscientious decision while participating in *either* criminal or civil deliberations would be significantly undermined."

*Jones v. Sisters of Providence in Washington, Inc.,* 140 Wash.2d 112, 994 P.2d 838, 842 (2000).

Although almost every court that has considered the issue of the presence of an alternate juror during deliberations has found it to be error, courts are not uniform as to the remedy and whether prejudice is presumed, whether the error is *per se* reversible or whether harmless error concepts apply. *See* Annot., *Presence of Alternate Juror in Jury Room as Ground for Reversal of State Criminal Conviction, supra.* Some courts have chosen a presumption of prejudice approach, *see,*

*e.g., United States v. Watson,* 669 F.2d 1374, 1392 (11th Cir.1982); *People v. Boulies,* 690 P.2d 1253, 1255–56 (Colo. 1984); *Johnson v. State,* 235 Ga. 486, 220 S.E.2d 448, 454 (1975); *State v. Crandall,* 452 N.W.2d 708, 711 (Minn.Ct.App. 1990); *State v. Scrivner,* 676 S.W.2d 12, 14 (Mo.Ct.App.1984); *State v. Coulter,* 98 N.M. 768, 652 P.2d 1219, 1221 (Ct.App. 1982); *Yancey v. State,* 640 P.2d 970, 971 (Okla.Crim.App. 1982); *Cuzick,* 530 P.2d at 290; other courts have chosen an automatic reversal requirement, *see, e.g., United States v. Beasley,* 464 F.2d 468, 470 (10th Cir.1972); *Bouey v. State,* 762 So.2d 537, 540 (Fla.Dist.Ct.App.2000); *Commonwealth v. Smith,* 403 Mass. 489, 531 N.E.2d 556, 561 (1988); *State v. Bindyke,* 288 N.C. 608, 220 S.E.2d 521, 533 (1975); *Brigman v. State,* 350 P.2d 321, 322–23 (Okla.Crim.App.1960); *Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746, 749 (1949). At least two courts have required the defendant to establish prejudice. *See Potter v. Perini,* 545 F.2d 1048, 1050 (6th Cir.1976); *State v. Grovenstein,* 335 S.C. 347, 517 S.E.2d 216, 218 (1999).

Our recent treatment of juror contact with a trial witness is instructive. In *Jenkins v. State,* 375 Md. 284, 825 A.2d 1008 (2003), we considered whether the defendant was entitled to a new trial based on improper contact during the trial between a juror and a police witness for the State. We noted that "[r]egardless of whether details of the ongoing trial were discussed, personal and prolonged contact as occurred in this case not only interjects an inherent prejudice to petitioner in the form of possible bias in favor of the State's case, but also creates an appearance of serious impropriety and causes subsequent serious harm to the perception of the integrity of the jury process itself." *Id.* at 289, 825 A.2d at 1011. We presumed prejudice and held that a new trial was mandated. Judge Cathell, writing for the Court, explained as follows:

"The harm done is patent due to the difficulty of proving such contentions post-verdict where in Maryland the court's ability to inquire into jury motives is, to a large degree, proscribed by rule [5–606]. Therefore, a presumption of prejudice is appropriate in such cases."

*Id.* at 316, 825 A.2d at 1027. As to the possibility of rebutting prejudice, we further noted that, because Rule 5–606 precludes any inquiry into a juror's motives during deliberations, it would "be very difficult for the State to rebut any presumption of prejudice under such circumstances." *Id.* at 305 n. 19, 825 A.2d at 1020 n. 19.

We had the occasion in *Hayes v. State*, 355 Md. 615, 735 A.2d 1109 (1999), to consider whether an alternate juror may be substituted for a regular juror after the alternate juror had been excused and after the jury had begun deliberations. Judge Wilner, writing for the Court, discussed the history of the use of alternate jurors in Maryland as well as in federal and other state courts. At issue was the meaning of "when the jury retires to consider its verdict," contained in Rule 4–312(b)(3).[9] We concluded as follows:

> "[A]n alternate juror who remains qualified to serve may be substituted for a regular juror who is properly discharged, until such time as the jury enters the jury room to consider its verdict and closes the door. We view the closing of the door as marking the point at which the ability to substitute ends——the effective point at which we consider the jury to have commenced deliberations."

*Id.* at 635, 735 A.2d at 1120. Once the door has closed, prejudice to the defendant is presumed and reversal is required. In so holding, we rejected "the Federal approach of circumventing the rule through an expansive harmless error or presumptive non-prejudice doctrine that is entirely foreign to our jurisprudence." *Id.* The standard we adopted in *Hayes* we deemed to be a practical one, "because compliance with it can be established through objective and extrinsic evidence, without the need to question jurors as to what went on in the

---

**9.** Rule 4–312(b)(3) provides, in pertinent part, as follows:

"Any juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty, shall be replaced by an alternate juror in the order of selection. An alternate juror who does not replace a juror shall be discharged when the jury retires to consider its verdict."

jury room after the door was closed—when deliberations really started." *Id.* at 636, 735 A.2d at 1120.

It has long been the rule in Maryland, without any deviation, that a juror may not impeach his or her verdict. *See Jenkins,* 375 Md. at 331, 825 A.2d at 1036; *Williams v. State,* 204 Md. 55, 67, 102 A.2d 714, 720 (1954); *Browne v. Browne,* 22 Md. 103, 113 (1864). Maryland Rule 5–606 prohibits inquiry into the juror's mental processes or statements made during deliberations. The reason for the rule has been stated as follows:

> " 'Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room and afford an opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony and has considered it unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the Court, to be subverted by going behind it and inquiring into the secrets of the jury room.' "

*Brinsfield v. Howeth,* 110 Md. 520, 530, 73 A. 289 (1909) (quoting 14 *Ency. Pleading and Practice* 906). Chief Judge Sobeloff, writing for the Court in *Williams,* further amplified on the reasons behind the rule:

> "Other risks sought to be averted, it has been said, are harassment of jurors by disgruntled losing parties; removal of an element of finality from judicial decisions; and through allowing jurors to swear to alleged examples of reprehensible conduct, a decrease in public confidence in the judicial process. In an offer to prove facts nullifying the verdict on a motion for a new trial, the theory for exclusion of the jurors' deliberations during retirement, their expressions, arguments, motives, and beliefs, may, according to Prof. Wigmore, embrace both the Privileged Communications Rule and the Parol Evidence Rule. 8 Wigmore, *Evidence,* Secs. 2346, 2348."

*Williams,* 204 Md. at 67–68, 102 A.2d at 720. *See also* American Bar Association, *ABA Standards for Criminal Justice: Discovery and Trial by Jury* 267–68 (3d ed.1996).

 We consider the presence of alternate jurors during the jury deliberations as sufficiently impinging upon the defendant's constitutional right to a jury trial as guaranteed by the Maryland Constitution and Maryland Rules of Procedure to create a presumption of prejudice. Jury deliberations are private and are to be conducted in secret. *See Jenkins,* 375 Md. 284, 825 A.2d 1008. The rule prohibiting verdict impeachment is stringent and of long standing; one reason for the rule is to protect the secrecy of jury deliberations. *Harford Sands v. Groft,* 320 Md. 136, 145, 577 A.2d 7, 11 (1990). It has been said that while privacy is not a constitutional end in itself, it is the means of ensuring the integrity of the jury trial itself. *See Johnson v. Duckworth,* 650 F.2d 122, 125 (7th Cir.1981). The presence of alternate jurors who have no legal standing as jurors injects an improper outside influence on jury deliberations and impairs the integrity of the jury trial. Prejudice must be presumed where alternates breach the sanctity of the jury room.

The application of a presumptive prejudice test is consistent with our prior cases where the type of error involved made it difficult to prove actual prejudice. For example, this Court has held that a violation of Rule 4–361(b), dealing with substitution of a judge during a jury trial, warrants a presumption of prejudice. *Hood v. State,* 334 Md. 52, 637 A.2d 1208 (1994). In *Hood,* we stated:

> "[W]e believe the creation of a presumption of prejudice for a violation of this Rule recognizes the importance of compelling compliance with its requirements and recognizes as well the difficulty of proving actual prejudice...."

*Id.* at 62, 637 A.2d at 1213.

This view is consistent with our jurisprudence and the better reasoned opinions from other jurisdictions that have considered this issue. In this regard, the Supreme Court of North Carolina noted, in *State v. Bindyke,* 288 N.C. 608, 220 S.E.2d 521 (1975) as follows:

"The rule formulated by the overwhelming majority of the decided cases is that the presence of an alternate, either during the entire period of deliberation preceding the verdict, *or* his presence at any time during the *deliberations* of the twelve regular jurors, is a fundamental irregularity of constitutional proportions which requires a mistrial or vitiates the verdict, if rendered. And this is the result notwithstanding the defendant's counsel consented, or failed to object, to the presence of the alternate.[10] *See United States v. Beasley*, 464 F.2d 468 (10th Cir.1972); *United States v. Virginia Erection Corporation*, 335 F.2d 868 (4th Cir.1964); *People v. Britton*, 4 Cal.2d 622, 52 P.2d 217 (1935); *People v. Adame*, 36 Cal.App.3d 402, 111 Cal.Rptr. 462 (1973); *People v. Bruneman*, 4 Cal.App.2d 75, 40 P.2d 891 (1935); *Berry v. State*, 298 So.2d 491 (Fla.App. 4th Dist.1974); *Glenn v. State*, 217 Ga. 553, 123 S.E.2d 896 (1962); *State Highway Comm. v. Dunks*, Mont., 166 Mont. 239, 531 P.2d 1316 (1975); *People v. King*, 13 A.D.2d 264, 216 N.Y.S.2d 638 (1961); *Brigman v. State*, 350 P.2d 321 (Okl.Cr.App.1960); *Commonwealth v. Krick*, 164 Pa.Super. 516, 67 A.2d 746 (1949); *State v. Cuzick*, 85 Wash.2d 146, 530 P.2d 288 (1975); Annot., Alternate or Additional Jurors, 84 A.L.R.2d 1288, 1312–14 (1962); 50 C.J.S. Juries § 123 c and d (1947)."

*Id.* at 531. Following a discussion of several cases finding reversible error based on the presence of alternate jurors during jury deliberations, the court concluded as follows:

_____

**10.** Since the Supreme Court decision in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), some jurisdictions have modified this view on the issue, particularly when there was no objection below and the threshold issue on appeal is whether the issue is preserved for appellate review, and then the matter is considered under the plain error doctrine. *See id.* at 739, 113 S.Ct. at 1780, 123 L.Ed.2d at 523 (stating "the issue here is whether the alternates' presence sufficed to establish remedial authority under Rule 52(b), not whether it violated the Sixth Amendment or Due Process Clause"). The issue of preservation for appellate review or waiver is not an issue in the case *sub judice* because appellant objected to the presence of alternate jurors in the jury room.

"After considering the decisions expounding both the majority and minority views we are constrained to adopt the majority rule and hold that the presence of an alternate in the jury room during the jury's deliberations violates N.C. Const. art. I, § 24 and G.S. 9–18 and constitutes reversible error *per se*. We find the rationale upon which this rule is based irrefutable: (1) Participation of an alternate in the deliberations of the jury negates a defendant's right to trial by jury as it existed at common law, that is, by a jury of twelve in the inviolability, confidentiality and privacy of the jury room. (2) Public policy and practical considerations preclude any hearing to determine whether the alternate's presence in the jury room during deliberations affected the jury's verdict or prejudiced the defendant in that (a) any such hearing would necessarily be inconclusive because no adequate standards can be devised for determining whether the alternate's presence affected the jury; (b) upon a hearing in which a defendant attempts to show prejudice he would have to rely upon either the testimony of the alternate juror, members of the panel or both; and (c) an inquiry into what transpired in the jury room during the alternate's presence itself invades the sanctity, confidentiality, and privacy of the jury process and gives the appearance of judicial interference with the jury.

We cannot adopt a rule which would allow the trial judge to attempt to determine whether the alternate was present in the jury room a 'substantial' length of time during deliberations or had participated in the deliberations to defendant's prejudice. Where would the court draw the line between insubstantial and substantial presence? In *Beasley* the court held that presence for twenty minutes invalidated the verdict; in *Krick*, ten minutes voided the trial. We hold that at any time an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial. There is, however, no substitute for common sense, and the foregoing rule has no application where the alternate's presence in the jury room is inadvertent and momentary,

and it occurs under circumstances from which it can be clearly seen or immediately determined that the jury has not begun its function as a separate entity."

*Id.* at 533–34.

In the oft-cited case of *State v. Cuzick*, 85 Wash.2d 146, 530 P.2d 288 (1975), the Supreme Court of Washington considered the effect of the presence of a thirteenth juror on the verdict. The court reversed, holding that where the intrusion by the juror involved the visible presence of an alternate juror for the full length of the deliberations, the presumption of prejudice clearly was not conclusively overcome. *Id.* at 290. The court's reasoning is persuasive. The court noted that no statutory authorization for more than twelve jurors existed in Washington State. *Id.* at 289. The court went beyond "the somewhat strained argument that the alternate juror's presence in the jury room made him part of the jury and thus caused the jury to be composed of an unauthorized number of persons," and instead noted that "the very fact that the alternate was *not* a full participant in the jury's discussions raises a more significant issue: the maintenance of proper jury secrecy." *Id.* The court held that the error was reversible, adopting the strict standard that "prejudice will be presumed to flow from a substantial intrusion of an unauthorized person into the jury room unless 'it affirmatively appears that there was not and could not have been any prejudice.' " *Id.* at 290. The court concluded that "where, as here, the intrusion involves the visible presence of a nonjuror for the full length of deliberations, the presumption of prejudice clearly has not been so conclusively defeated." *Id.* (citations omitted).

The State argues that any prejudice is rebutted based on counsel's opening remarks and appellant's testimony. We disagree.

In order to rebut prejudice, it must affirmatively appear that there was not, and could not have been, any prejudice. Because Rule 5–606 prevents a juror from impeaching the verdict, the presumption of prejudice which

arises from the presence of the alternate jurors may not be rebutted by inquiring into the proceedings inside the jury room or into the juror's mental processes or any statements made during the deliberations. *See Jenkins,* 375 Md. at 331, 825 A.2d at 1036; *Williams,* 204 Md. at 67, 102 A.2d at 720 (1954); *Browne,* 22 Md. 103, 113 (1864). To follow the State's logic, we would have to inquire into the jury deliberations. That we will not do.

■ The presence of alternate jurors during deliberations creates a presumption of prejudice that is effectively unrebuttable under most circumstances. The presumption may be rebutted, for example, by showing that the alternate juror was not in the jury room after the door was shut, *see Hayes,* 355 Md. 615, 735 A.2d 1109, or where the alternate juror entered the jury room merely to get a coat and deliberations had not yet begun, *see People v. Rhodes,* 38 Ill.2d 389, 231 N.E.2d 400 (1967) (where alternate juror went into jury room to get her coat and was not present during jury deliberations, her presence did not require reversal of defendant's conviction).

We reject the State's argument that the presumption of prejudice is rebutted because appellant admitted during his testimony that he transported a handgun and his counsel made certain statements in opening remarks to the jury. Notwithstanding the testimony of petitioner, the burden remains on the State to prove the case beyond a reasonable doubt, and jurors are free to accept or reject the testimony of any witness. To apply the logic of the State, we would necessarily have to inquire into the deliberations and mental processes of the jurors. It is undisputed that the alternates were present throughout the jury deliberations, and under the circumstances presented herein, the presumption of prejudice has not been overcome. Reversal is mandated.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI- MORE CITY REVERSED; CASE REMANDED TO THAT COURT FOR A NEW TRIAL; COSTS TO BE PAID BY BALTIMORE CITY.*